## Hollenbaugh Estate.

Argued November 23, 1960. Before BELL, MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*William R. Howard,* for appellants.

*Henry F. Gingrich,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 16, 1961:

Isaac M. Hollenbaugh, 85 years of age and ill in bed, decided to make a disposition of his property in anticipation of the day no one escapes. A friend, James E. Hockenberry, came to see him with a printed WILL AND TESTAMENT form and the both of them proceeded to fill in the blank spaces in order to give expression to Hollenbaugh's intentions. The final product was hardly a work of literary perfection. Grammar, spelling, punctuation, and syntax were as

apparently in as sick a state as the testator and, as a consequence, a controversy has arisen as to just what the decedent had in mind in disposing of his estate.

The first dispositive paragraph of the will which, incidentally, is the one most directly involved in this appeal, reads: "1. Mrs. Mae E. Keck will receive over and above her equal share of the Estate of Mr. Isaac M. Hollebaugh/. Seven Thousand and Five Hundred Dollars. That of which is made out in a Bond. To her as Benificary for my care and keeping as long as i live."

If one had to draw a precise meaning from this paragraph standing alone, he might give up in despair. However, through the wisdom of the centuries the courts have developed certain rules of construction and convenience which allow judges to distil meaning from jargon, comprehension from incomprehensibility and purpose from unintelligibility.

The second paragraph of the Hollenbaugh will reads: 2. "All other Bonds will be divided equally among the remaining Heirs."

When Hollenbaugh's will was fashioned by himself and his equally legally uneducated collaborator, there were in existence the following bonds: (1) 11 U.S. Savings Bonds in his name and that of his wife, who had died in 1950, having a face value of $6,400. (2) 4 U.S. Savings Bonds standing in his name and that of his son Ross, having a face value of $7,500. (3) 5 U.S. Savings Bonds standing in his name and that of his daughter Mae, having a face value of $8,500.

Hollenbaugh died on January 28, 1959, leaving seven children as "remaining heirs." His total estate was inventoried at $12,819.85. The bonds outstanding in his name had an actual value of $6,802.60, those in his son's name were worth $7,500, and those held with his daughter Mae were worth $8,378.

The will was submitted for probate in the Orphans' Court of Lancaster County. The auditing judge decided that under the will, the daughter Mae Keck, was not entitled to the $7500 mentioned in the first paragraph of the will since she had already received, as a surviving coowner, the amount of $8,378, the face value of the $8500 bonds. The court en banc reversed this finding and awarded $7500 to Mae Keck as a declared legatee under Item 1 of the will as heretofore quoted. Two of the other Hollenbaugh children appealed from this distribution.

They contend that when the testator mentioned $7500 in Item 1, he was referring to the $8500 bonds registered in the name of Mae Keck and himself as coowners. But, uneducated and ill as he was, Hollenbaugh cannot be assumed to have been ignorant of facts strictly within his knowledge. He knew that Mae was entitled upon his death to the $8500 bonds since she was a coowner.

To say that Hollenbaugh intended to give his daughter what she would already have possessed would be to make of a will something retroactive instead of prospective. A will is a prophecy, not a history.

To give Hollenbaugh's will the interpretation contended for by the appellants would be to wipe out Item 1 entirely. This, of course, would violate the rule that the "construction of a will which renders every word operative is to be preferred to one which makes some words and sentences idle and nugatory..." *Horn Estate*, 351 Pa. 131, 136.

The whole will negatives the construction sought by the appellants. The remaining portions of the will read as follows: "3. It is here by agreed by.Mr.Isaac M Hollenbaugh that Mr.Ross E Hollenbaugh And Mrs.Mae E Keck.Will be the Administrators of my Estate at death.

"4. It is here by agreed by.Mr.Isaac M Hollenbaugh that Mrs.Mae E Keck will receive my watch and chain at my death.

"5. It is here by agreed by.Mr.Isaac M Hollenbaugh that. Ronald C Keck will receive my electric razor at my death.

"And as to all the rest, residue and remainder of my Estate, real, personal or mixed, of whatever nature or kind, or wheresoever situate at the time of my decease, I hereby give, devise and bequeath" The testator did not complete the last quoted clause of the will.

It will be noted here that no mention is made of the bonds outstanding in the name of the son Ross as coowner with the decedent. This establishes rather clearly that Hollenbaugh knew he did not have to bequeath these bonds to Ross since Ross would succeed to their ownership on the basis of coownership alone. Since he did not refer to Ross's bonds and yet Ross came into possession of them, it would be unreasonable to interpret Item I as giving to Mae the bond of which *she* was already coowner. If Hollenbaugh did not want Mae to have $7500 in addition to her coownership bonds, he needed only to remain silent about Mae, as he was silent about Ross. When one speaks to a subject on which he could remain silent with effect, it is illogical to assume that he is speaking purposelessly.

Hollenbaugh had a very good reason to speak of Mae. Mae was one of those loyal children, unfortunately not found in every family of numerous children, who consider it a loving duty and joy to take care of an aged and helpless father.

In *Newlin Estate*, 367 Pa. 527, this Court said: "The testator's intent must be ascertained by a consideration of the entire will which of course must

be read in the light of the circumstances surrounding him when he made it."

What were those circumstances in the making of the Hollenbaugh will? In the late Spring of 1955 Hollenbaugh took up residence in the home of his daughter Mae. The other children apparently were less than eager to have their father live with them. C. H. Keck, husband of Mae Keck, related a conversation with the decedent at the time he came to the Keck domicile: "And after while he said to me, he said, Can I make my home with you? He said the others won't ask me to come and stay with them."

Nor did the other children wear down the pavement leading to the Keck home while their father lay there bedfast. Mrs. Keck testified: "Q. Since June, 1955, did he live with any of the other children? A. No, he didn't. Q. You took care of him at all times since June, 1955, to the date of his death? A. Yes, I did. Q. Did anyone else come to help? A. We asked them several times to come and stay with him until I could get out and have a little rest. Q. Did they come? A. Sometimes they came, but mostly had excuses they couldn't come."

At times the aged Hollenbaugh was so ill and helpless that "he couldn't move very well," and "he would have to be lifted." It was Mrs. Keck's arms which did the lifting. During the four years Mr. Hollenbaugh stayed with his daughter Mae, she tended him "like a baby."

No arrangements were made for the testator to pay for his room and board. From time to time he gave Mrs. Keck small sums of money, but he did the same with the other children. Reading, therefore, the language of Hollenbaugh's will "in the light of the circumstances surrounding him when he made it" (*Newlin Estate,* supra), and including within those circumstances, as we must, "his family and all the

natural objects of his bounty, as well as his relations with and the condition of his family and his beneficiaries and all claimants to any part of his estate. . ." (*Conlin Estate*, 388 Pa. 483), we have no difficulty in interpreting Item I in the will as providing for an additional gift of $7500 to daughter Mae. Even if this gift were to be construed as conditioned upon the daughter providing him with "care and keeping as long as i live," (as stated in the will), there can be no dispute that she amply met this condition.

The appellants then contend that if Hollenbaugh intended to make a gift of $7500 in the form of a specific legacy of a $7500 bond, the legacy would have to be regarded as adeemed because the estate did not contain a $7,500 bond. This argument lacks substance. The testator did not mention any particular bond, or even refer to any particular type of bond. In a situation like this we apply the general rule of construction that a general legacy is to be preferred over a specific legacy. *Wilson's Estate*, 260 Pa. 407; *Hammer's Estate*, 158 Pa. 632.

In Item I the testator said that Mae was to receive "over and above her equal share of the estate" $7500 "made out in a bond." This reference to "a bond" is quite incidental to the dominant intent to give $7500. To say that this was a specific legacy of a $7500 bond when no such bond is specified, when no type of bond is referred to, and, in addition, there was no such bond in existence, is to deal in suppositions which have no pretense to reality. What Hollenbaugh wanted to give and, in a blundering way, stated he wanted to give to Mae, was $7500. He spelled out the amount: "Seven Thousand and Five Hundred Dollars." and ended the phrase with a period. It is not illogical or unreasonable to suppose that the collaborating scrivener was a little confused on the subject of bonds, but he did specify in his own type of English that this money

was to go to Mae "as Benificary for my care and keeping as long as i live." Unadorned and unelaborated upon, the meaning is clear that this 85-year old man wanted to reward his daughter for caring for him and keeping him as long as he lived.

In *McFerren Estate*, 365 Pa. 490, 492, this Court, speaking through Justice ALLEN M. STEARNE, well distinguished between specific and general legacies: "A *specific legacy* has been defined as a gift by Will of a specific article or part of testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by the delivery of the particular thing. . . A *general legacy* is one without such words of identification. A *specific legacy* is adeemed where the thing bequeathed was not a part of testator's estate, whether because it was sold, exchanged, or converted into another form. . . A *general* legacy is not liable to ademption. In case of a general legacy of stocks or bonds, if none are owned by testator at the time of death, the legatee may elect to take the value in cash or have the fiduciary purchase them for him. . . A legacy is presumed to be general rather than specific. . ." (Emphasis that of the Court) In that case it was held that the bequests of "one $5,000.00 4% Treasury Note"; "One $1,000 4% Treasury Note" and "Thirty (30) Shares Armour & Company 7% Preferred Stock" all constituted *general* legacies.

The illuminating direction of that case certainly reveals the $7500 item in the will under consideration to be a general legacy and, therefore, not adeemable. Under that ruling Mrs. Mae Keck may take the value of her bequest in cash rather than in a bond purchased for her. *McFerren Estate*, supra.

Decree affirmed. Each party to bear own costs.

Mr. Justice BENJAMIN R. JONES and Mr. Justice COHEN dissent.