## Tower Estate.

Argued January 17, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused April 22, 1963.

*Lewis H. Van Dusen, Jr.,* with him *Cuthbert H. Latta, Thomas Reath,* and *Drinker, Biddle & Reath,* for appellants.

*William H. S. Wells,* with him *Thomas S. Weary, John R. Suria,* and *Saul, Ewing, Remick & Saul,* for appellees.

*Philip Klein,* guardian and trustee ad litem, in propria persona, appellee.

OPINION PER CURIAM, March 19, 1963:
Charlemagne Tower (testator), a resident of Philadelphia, died on July 24, 1889. Under the pertinent terms of his will, dated May 21, 1889, he provided, inter alia:

"Item 4. I have living at the date of this my Will ten lineal descendants: that is to say, five children and five grandchildren. [He then named the five children and five grandchildren.]

"Item 5. All the rest, residue and remainder of all my Property and Estate whatsoever and wheresoever,

Real, Personal or Mixed, I give devise and bequeath unto . . . [trustees, in trust for my wife and children] . . . At and after the decease of each of my said five children, severally and successively, his or her share of the income from my Residuary Estate, as above designated shall be appropriated and divided among the children and issue of deceased children and issue of deceased children of each one of my children as he or she may successively die, in the same shares and proportions they would take in distribution under the intestate laws of Pennsylvania from their deceased parent, and in like manner the share of income which may accrue to any of grandchildren or more remote lineal descendants under this my Will and who may die before the period appointed for the distribution of the principal of my residuary estate shall in like manner accrue to their children and issue of deceased children as above provided, and such payment or application of the income of a deceased child's or grandchild's share among his or her children and issue shall continue until the arrival of the period for division of the capital of my Residuary Estate, and if any one or more of my children or grandchildren shall die without leaving any issue to survive him or her, then the share of income theretofore appointed and payable to such decedent shall go to the other of my children or grandchildren, (as the case may be), then living and the issue of any others of my said children or grandchildren who may then be deceased, in the same way and manner in all respects as are limited and provided in respect to their original shares which shall simply be augmented thereby but in all respects governed by the same provisions as applied to their original shares, PROVIDED always, however, that I authorize and empower each one of my children or grandchildren who may leave a husband or wife surviving him or her, by his or her Last Will and Testament, or any writing in

the nature thereof by him or her signed, to make provision for any surviving husband or wife either of them may leave surviving, to continue during life but not to exceed one-fourth of the income which would have been payable to such testator or appointer if he or she had remained living. . . . I direct the division of all the capital of my Residuary Estate among all my lineal descendants then living, to each an equal fractional share, thereof without regard to their stock or the degree of their descent from me . . . ."

. . .

" 'Item 12. If I have not already sufficiently declared my intention in respect thereto, I do now declare that . . . each and all of the beneficiaries who may die leaving issue such issue shall succeed to the share which the decedent would have taken if living, and if more than one, in equal shares. . . .' "

The income from this testamentary trust initially was paid, in accordance with the trust's terms to testator's widow and children, all of whom are now dead. The income is now payable to testator's living grandchildren and spouses and descendants of deceased grandchildren. One of testator's grandchildren (whose share of the trust income was 5/48s), Geoffrey Tower, died on March 26, 1957. Surviving him were his widow who died on December 4, 1959, two *natural* children and two children *adopted* in 1941.

Subsequent to the death of Geoffrey Tower and his widow, an account was filed; at the audit of that account, Geoffrey Tower's share of the income from the trust was awarded to his two *natural* children, the *adopted* children apparently not having received notice of the audit. On January 16, 1962, a petition to review the adjudication, which awarded the income to the two natural children, was presented to the Orphans' Court of Philadelphia County and the adjudication was opened to determine what, if any, rights the two adopt-

ed children had to share in Geoffrey Tower's portion of the income from the trust. On March 20, 1962, Judge LEFEVER, the auditing judge, decided that the two adopted children had no rights in the testator's estate. On exceptions filed to this supplemental adjudication, the court en banc, speaking through Judge BOLGER, confirmed this supplemental adjudication.

The question presented upon this appeal is: "Where: A testator gives a share of income to a grandson for life and directs that at the grandson's death such income shall pass to the grandson's 'children and issue of deceased children . . . in the same shares and proportions they would take in distribution under the intestate laws of Pennsylvania from their deceased parent' and [t]he grandson dies leaving four children— two by birth and two by adoption; . . .'"* do the two *adopted* children share equally with the two *natural* children the share of such income?

After a careful examination of the will of this testator and the authorities cited in the excellent briefs submitted by appellants and appellees, we find ourselves in full agreement with the conclusion reached by the auditing judge and confirmed by the court en banc: ". . ., the instant testator's will controls the controversy. His meaning must be determined from his will in the light of the law in effect on July 24, 1889. His will begins with words of *blood,* viz., 'children', 'grandchildren', 'issue' and 'lineal descendants', and closes with 'descent from me', also words of blood. It is inescapable that testator, by the language he used, intended to include only relatives of his blood and to exclude strangers to the blood, as subsequent takers of income on a grandchild's death. [The adopted children], therefore, are not entitled to share."

Decree affirmed.

---

* From brief of appellant.

394

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The conclusion of the majority places too limited and too narrow an interpretation upon testator's language, his intention and the future objects of his generosity. I am unable to conclude that testator, in 1889, in employing the words "children" and "issue", intended to exclude the two adopted children of his grandson (adopted by him in 1941) from participating with that grandson's natural children (at the grandson's death in 1957) in the share of income formerly received by their father. I would construe testator's language to include his grandson's children by both adoption and birth. I dissent.

Mr. Justice MUSMANNO joins in this dissenting opinion.