## Benedum Estate.

Argued October 4, 1967. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*C. Donald Gates, Jr.,* with him *Brandt, Riester, Brandt & Malone,* for appellant.

*Harold R. Schmidt,* with him *Henry McC. Ingram, Robert S. Newkirk,* and *Rose, Schmidt and Dixon,* and *McDonald, Sanders, Wynn, Ginsburg, Phillips & Maddox,* for appellee.

*William A. Meyer,* guardian and trustee ad litem, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 14, 1967:

The question involved: Is the adopted daughter of a deceased nephew, who was one of testator's life ten-

ants, included or excluded in a gift of income to the nephew's living children and living issue of a deceased child, where the testator in his 1948 will provided that "the words *'child', 'children' and 'issue'* . . . *shall include only issue of the body of my niece and nephews"*? From a Decree of the Orphans' Court, which held that the adopted daughter was not entitled to a share of the income under this testator's will, the adopted daughter took this appeal.

Testator Michael L. Benedum died on July 30, 1959. He left a very lengthy and very detailed will dated July 5, 1948* which was obviously and undoubtedly prepared by an attorney. When he executed his will, testator had a wife** and sisters** whom he provided for, as well as nephews and nieces. The bequest here challenged consists of a 1/12th share which testator directed to be held in trust for his nephew, *Darwin* Benedum, for life, with gifts after his death to persons and upon terms hereinafter set forth. Darwin died on January 24, 1966, survived by a widow and a son and the present appellant, Frances Benedum Williams, who was adopted by her stepfather, Darwin Benedum, on July 3, 1941. With respect to the trust for Darwin, testator pertinently provided: "(4) . . . Subject to the foregoing annuity in favor of my sisters, one-half of which shall be borne proportionately by such separate trusts, my Trustees shall pay quarterly the net income from such separate trusts, and shall distribute the principal thereof as follows: (a) My said Trustees shall pay to the nephew . . . for whom such part is held in trust, the net income therefrom so long as such nephew . . . is living at the time of each such payment. If such nephew . . . is not living at any such time, my said

---

\* Testator also left five codicils which were executed in subsequent years.

\** Testator's wife and one of his sisters predeceased him.

Trustees shall then and thereafter pay to the surviving spouse of the deceased nephew . . ., provided such spouse is qualified, as aforesaid, and so long as such spouse is living and remains unmarried at the time of each such payment, one-half of the income therefrom so long as there is living a *child or children or issue** of any deceased child or children of the deceased nephew . . ., and all of the income *when there is no such living child or children or issue.* All income not paid to said qualified surviving spouse, if such there be, shall be paid *to such child or equally to such of the children* of the deceased nephew or niece and the *issue* of any deceased child or children, per stirpes and not per capita, as are living at the time for each such payment of income.

"(b)  *Upon the death* or remarriage of the qualified surviving spouse, if there be such . . ., the trust shall terminate, and the assets thereof shall be paid and distributed *to the child or in equal shares to the children then living and living issue,* per stirpes and not per capita, of any deceased child or children of such deceased nephew . . . ." with contingent remainders.

There then follows the controversial language which is determinative of the question here involved:

"*Article X:*

"(5)  It is my further will that *the words 'child', 'children' and 'issue',* when used in this Article X of my Will, *shall include only issue of the body* of my niece and nephews."

Appellant "claims that she became 'issue of the body of Darwin' in the eyes of the law when she was adopted by him on July 31, 1941, [and] as such, she is includable as an income beneficiary."

The Orphans' Court decided that the word "issue" as used in this will meant what it always has meant

---

* Italics throughout, ours.

and what the testator said, clearly and specifically and unambiguously it meant. The words " 'child', 'children' and 'issue', when used in this Article X of my Will, *shall include* [says the testator] *only issue of the body of my niece and nephews,*" and not an adopted child of testator's niece and nephews. In view of our prior decisions, and especially in the light of the language of this will, what else could "issue of the body" mean? Countless times this Court has declared that a testator's intention is the polestar in the construction of every will. In *Houston Estate,* 414 Pa. 579, 201 A. 2d 592, the Court pertinently said (pages 586-587) : "In Lewis Estate, 407 Pa. 518, 180 A. 2d 919, the Court (quoting from Burleigh Estate, 405 Pa. 373, 376, 175 A. 2d 838), recently said (page 520) : ' "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; . . .: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337; Pruner Estate, 400 Pa. 629, 162 A. 2d 626; Wanamaker Estate, 399 Pa. 274, 159 A. 2d 201; Hope Estate, 398 Pa. 470, 159 A. 2d 197." '

"This law is stated and reiterated in a myriad cases before and several after Lewis Estate. In Walton Estate, 409 Pa. 225, 186 A. 2d 32, the Court once again pertinently said (page 231) : ' " " "No rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail" ' "; Collins Estate, 393 Pa. 519, 522, 143 A. 2d 45. We reiterate what by now is hornbook law: " 'The testator's intention is the pole star in the construction of every will and that intention must be ascertained from the language and scheme of his [entire] will [together with the surrounding facts and circumstances];

it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words. Kelsey Estate, 393 Pa. 513, 143 A. 2d 42; Britt Estate, 369 Pa. 450, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 119 A. 2d 60; Cannistra Estate, 384 Pa. 605, 121 A. 2d 157.' Saunders Estate, 393 Pa. 527, 529, 143 A. 2d 367. See to the same effect Althouse Estate, 404 Pa. 412, 172 A. 2d 146. . . .": Woodward Estate, 407 Pa. 638, 640, 182 A. 2d 732.' "

Appellant relies upon three contentions: (1) Subsection 6 of §14 of the Wills Act of 1947, as amended, P. L. 89, 20 P.S. §180.14(6) which provides in substance that *in the absence of a contrary intent appearing in the will,* a will making a devise or bequest to a person described by relationship to the testator or to another shall be considered the *child of his adopted parent* or parents and not the child of his natural parents if adopted prior to the death of the testator, and (2) the public policy of the State in considering adopted children as the equivalent of natural children; and (3) *Fownes Trust,* 421 Pa. 476, 220 A. 2d 8; *Pennington Trust,* 421 Pa. 334, 340, 219 A. 2d 353; *Tower Estate,* 410 Pa. 389, 189 A. 2d 870; *Holton Estate,* 399 Pa. 241, 159 A. 2d 883, and eleven additional cases cited therein; *Howlett Estate,* 366 Pa. 293, 77 A. 2d 390—which held that "issue" meant "issue of the body" and did not include adopted children or adopted issue— should be overruled. We disagree with each and every one of appellant's contentions.

For a hundred years, and as recently as June 23, 1966, this Court has decided and held that "issue" meant "issue of the body," and did not include adopted issue, in the absence of (1) language in the deed or will showing a contrary intent, or (2) of a controlling statute: *Fownes Trust,* 421 Pa., supra; *Tower Estate,*

410 Pa., supra; *Holton Estate*, 399 Pa., supra; *Howlett Estate*, 366 Pa., supra.

In *Fownes Trust*, 421 Pa., supra, the Court said (pp. 479-480): "Prior to the Estates Act of April 24, 1947, P. L. 100, 20 P.S. §301.1 et seq., if a gift was made by an inter vivos deed, the law was long and well established that children and grandchildren meant natural children and grandchildren, and *issue meant issue of the body,* in the absence of language in the deed showing a contrary intent. In other words, *such a gift did not include an adopted child or adopted grandchild or adopted issue.* Storb Appeal, 400 Pa. 567, 571-572, 163 A. 2d 302. The same interpretation and principle is enunciated in Howlett Estate, 366 Pa. 293, 297, 77 A. 2d 390; Holton Estate, 399 Pa. 241, 248, 159 A. 2d 883 *(and eleven cases cited therein)*; and in Tower Estate, 410 Pa. 389, 189 A. 2d 870.

". . .: '. . . In Howlett Estate, supra, the testator . . . created a trust with life estates to his children and then to a child's issue, or, in default of issue, to surviving children and the issue of deceased children. During the term of the trust a son died leaving no natural born children but a daughter who had been, adopted in 1897. Ruling that this adopted daughter of the deceased son was not entitled to take as "issue", this Court stated (p. 297): " 'Issue' is not synonymous with 'children'. *'Issue' means issue of the body,* offspring, progeny, natural children, physically born or begotten by the person named as parent: [citing cases]" ' "

Sub-section 6 of §14 of the Wills Act of 1947, as amended, P. L. 89, 20 P.S. §180.14(6), changed the status and the rights of an adopted child or children* but not of adopted issue, but provided this change was

---

* The Intestate Act of 1947, P. L. 80, 20 P.S. §1.8, has a similar provision.

to be effective only "in the absence of a contrary intent appearing in a will." Not only was there a clear contrary intent in Benedum's will, but in this will the testator went further than in almost any will in the books, or in any prior decision of this Court in clearly, specifically, unambiguously and incontrovertibly declaring his meaning and intent with respect to the words "child", "children" and "issue", namely:

"*Article X:* . . . (5) It is my further will that the words 'child', 'children' and 'issue', when used in this Article X of my Will, *shall include only* issue of the body of my niece and nephews."

The language evidencing the testator's intent to bequeath and devise his property *only to the issue of the body* of his nephews (and niece), and not to include therein adopted children or issue, could not be clearer. Not only was the gift to children and issue clarified and limited by the testamentary provision "to the issue of the body of my nephew," but it was even further clarified and restricted by the word "only." See *Saunders Estate,* 393 Pa., supra. Furthermore, to adopt the appellant's interpretation of this will would make nugatory and nonexistent the language of subsection (5). This would not only affront our common sense, but would violate the oft-repeated principles that every word and sentence in a will is to be considered in the interpretation thereof, if reasonably possible: *England Estate,* 414 Pa. 115, 200 A. 2d 897. In *England Estate,* the Court aptly said (page 119) : " ' ". . . A will must be so construed, if possible, as to give effect to every word employed by the testator and a construction which renders any of the words nugatory and futile must be rejected." Vandergrift Estate, 406 Pa. 14, 26 (1962). See also: Collins Estate, 393 Pa. 519 (1958) ; Hollenbaugh Estate, 402 Pa. 256 (1961). We cannot attribute to a testator an intention to write meaningless words into his will, when another con-

struction gives such words intelligent and effective meaning. Irwin's Estate, 304 Pa. 200 (1931). Unless no other conclusion is reasonably possible, an interpretation will not be adopted which makes any of the provisions of a will mere surplusage. Moyer's Estate, 280 Pa. 131 (1924).' "

Unless we decide (1) that over a dozen prior decisions of this Court should be reversed, *and* (2) that a testator should not be permitted by law to exclude in and by his will an adopted child or adopted issue when the law permits him to disinherit his own lawful children and the issue of his body and of their body: *Sommerville Will*, 406 Pa. 207, 177 A. 2d 496; *Little Estate*, 403 Pa. 534, 170 A. 2d 106; *and* (3) unless we hold that a testator cannot bequeath and devise his own property as he desires,* *and* (4) that we can ignore or rewrite the clear language of a will,—we cannot approve appellant's contentions. This we will not do.

Decree affirmed, each party to pay own costs.

Mr. Justice EAGEN concurs in the result.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.

———

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree with the result reached by the majority but do so without any departure from the views expressed in my dissenting opinion in *Fownes Trust*, 421 Pa. 476, 481-84, 220 A. 2d 8, 11-12 (1966) (Mr. Justice MUSMANNO and Mr. Justice JONES joined this opinion). Where the testator employs the terms "issue," "children" and the like, the public policy of this Commonwealth, favoring both adoption and the complete integration of the adopted child into his adoptive family, dictates that the adoptive child share in the testator's

———

* with several exceptions not here pertinent.

bounty as would any natural child. Despite my continued adherence to this position, I believe that in this instance the testator's use of the word "only" to modify the phrase "issue of the body of my niece and nephews" was sufficient to indicate his intent to exclude from his will adopted children. Appellant insists that to accomplish this purpose words in the negative, e.g., "the term issue shall not include adopted children of my niece or nephews," are necessary. In our quest to determine testator's intent, I am always loath to impose requirements that only specified language can be employed to achieve the desired result and would not do so here.

Furthermore, I cannot accept the majority's assertion that sub-section 6 of §14 of the Wills Act of 1947 did not change the status of adopted issue. The majority seems to hold that an adoptive grandchild or, in this case, an adoptive grandnephew is not within the terms of sub-section 6. However, this provision mandates the contrary conclusion: "(6) Adopted children. In construing a will making a devise or bequest to a person or persons described by relationship to the testator or to another, any person adopted before the death of the testator shall be considered the child of his adopting parent or parents and not the child of his natural parents: . . ." There is no indication in this sub-section of a legislative intent that a gift "to my grandchildren" should not include adoptive grandchildren and I would not, as does the majority, so hold.*

Mr. Justice JONES joins in this concurring opinion.

---

* In *Collins Estate*, 393 Pa. 195, 142 A. 2d 178 (1958), a unanimous Court held that, under the Wills Act of 1917, a bequest to "descendants" of the testatrix's daughter included an adoptive grandchild. I can find no reason in policy or law to resurrect a limitation rejected in *Collins*.