**Holloway Estate (No. 1)**

*S. Regen Ginsburg,* for exceptant.
*Edward M. David* and *Otis W. Erisman,* contra.

Before Klein, Adm. J., Bolger, Lefever, Saylor, Shoyer, and Silverstein, JJ.

## ADJUDICATION

KLEIN, Adm. J., May 12, 1970.—The reason for the filing of the present account is the death of William Evans Holloway, life tenant, on December 3, 1968, whereupon, by the terms of the will of testator, this trust terminated. Letters testamentary are stated to have been granted Adrienne G. Holloway by the Superior Court of the State of California for the County of Los Angeles.

The names of the remaindermen and all other necessary and relevant facts pertaining to the terms of the trust are set forth in the statement of proposed distribution.

All parties in interest are stated to have received notice of this audit. Proof of compliance with Rule 5, Section 5, of the Supreme Court—Orphan's Court Rules relating to notice to the Attorney General of the Commonwealth of Pennsylvania in cases involving charitable gifts, is annexed.

Harry D. Holloway died on March 15, 1939, leaving a will which was dated June 25, 1938. In item 8 of his will, he created a trust for his son, William Evans Holloway, as follows:

"ITEM 8. I have provided generously for my son, WILLIAM EVANS HOLLOWAY, during my lifetime, but I now give, devise and bequeath unto my Trustees hereinafter named, and their successors, Four Thousand (4,000) shares of the Common Stock of the Girard Investment Company, (which is the equivalent of $40,000.00), and the said corpus as so composed is to be retained as long as in the judgment of my trustees is proper and for the best interest of the trust herein created; IN TRUST, nevertheless, to invest, re-invest and keep invested (subject as hereinbefore and herein-

after provided) to collect the income therefrom arising and to pay the same to my son, WILLIAM EVANS HOLLOWAY, for and during the term of his natural life, . . .

"Upon the death of my said son, William Evans Holloway, leaving living issue, I direct that the said net income shall be paid to said child or children equally, share and share alike, until they shall respectively attain the age of twenty-one years, at which time I direct the corpus of the said Trust Fund shall pass to and vest in said child or children equally, share and share alike. In the event my son dies without leaving issue, I direct that the corpus of the Trust Fund hereinbefore provided for, shall fall into and become part of my residuary estate."

William Evans Holloway died on December 3, 1968, a resident of Los Angeles, Calif., at the age of 78 years. He had been married three times. His first two marriages were dissolved by divorce. Two children, who died in his lifetime, were born of his first marriage. No children were born of his other two marriages. He was survived by his third wife, Adrienne Holloway.

On November 4, 1968, William and his wife, Adrienne, who is now 79 years of age, adopted Evelyn Williams Hay in the Superior Court of the State of California for the County of Los Angeles. At the time of the adoption, William was in his terminal illness with cancer of the liver, which prevented him from appearing in court. He died less than a month later. Evelyn, the adopted child, is 67 years of age, married and the mother of two children who are in their forties.

Evelyn Williams Hay, the adopted child, now claims the corpus of the trust. Her claim is vigorously resisted by the trustees and the residuary beneficiaries, who maintain that her adoption does not qualify her to

receive any benefits under the will and that the corpus falls into and becomes part of the residuary estate.

Although the adoption of a 67-year-old married woman, who is the mother of two grown children, by a dying man of 79 is a strange and questionable phenomenon, we are without authority to challenge collaterally the decree of the California court and must give it full faith and credit, as the parties were all residents of the State at the time of the adoption proceedings. We may, however, question the judgment and common sense of the court which sanctioned such a peculiar and unnatural adoption.

At common law, adopted children had no right of inheritance from their adoptive parents. In Cave's Estate, 326 Pa. 358 (1937), Mr. Justice (later Chief Justice) Stern, said at page 359:

"The right of adopted children to inherit from kindred of their adoptive parents is dependent entirely upon statutory enactments, and because the 'call of the blood' is one of the most firmly rooted instincts of human nature, courts tend to a strict construction of such legislation. In the absence of a plain legislative mandate to the contrary a stranger to the adoption proceedings should not have his property diverted from its natural course of descent to the heirs of his blood; . . ."

A long line of cases clearly establishes that prior to the passage of the Wills Act of 1917, adopted children could not participate in the distribution of estates when testamentary gifts were made to children or issue: Schafer v. Eneu, 54 Pa. 304 (1867); Puterbaugh's Estate, 261 Pa. 235 (1918); Yates's Estate, 281 Pa. 178 (1924); Corr's Estate, 338 Pa. 337 (1940); Freeman's Estate (No. 1), 40 Pa. Superior Ct. 31 (1909).

The legislature in section 16(b) of the 1917 Wills Act, for the first time, provided for the inclusion of

adopted children of other than testator, if they were adopted prior to the date of the will. This section provides that:

"Whenever in any will a bequest or devise shall be made to the child or children of any person other than the testator, without naming such child or children, such bequest or devise shall be construed to include any adopted child or children of such other person *who were adopted before the date of the will,* unless a contrary intention shall appear by the will." (Italics supplied).

The Wills Act of 1947, which is the law presently in effect, changed this rule by providing that persons may take if adopted before the death of testator. The present case, however, is subject to the provisions of the Wills Act of 1917 as testator died in 1939, leaving a will executed in 1938. It is squarely controlled by Holton Estate, 399 Pa. 241 (1960), in which testator died in 1931, leaving a will executed in 1929. He created a trust which provided for the payment of income to a son, Howard, for life and " '. . . at his death and until the expiration of twenty-one years' " therefrom, " 'to divide the net income . . . into as many parts . . . as there shall be children of [Howard Holton] living at the quarterly distribution periods and children of [Howard Holton] then dead represented by descendants then living . . . and to pay over to each child or descendants of a deceased child of [Howard Holton] then found entitled its share of such income . . .' " It further provided that upon the expiration of the 21-year period, the trust principal was to be divided " 'into as many parts . . . as there shall be children of [Howard Holton] then alive and children of [Howard Holton] then dead, represented by descendants then living, . . . and the shares thus ascertained to pay over to each

child and descendants of a deceased child then found entitled, absolutely and in fee.' "

Howard adopted two children after testator's death. The Supreme Court, in a scholarly opinion by Mr. Justice Benjamin R. Jones, reviewed in considerable detail the development of the law in this State relating to the rights of adopted children to inherit from the estates of persons other than their adoptive parents. The court dismissed the claims of the adopted children and held: (1) the will disclosed "no intent, expressed or implied, that the testator contemplated either the inclusion in or the exclusion from the word 'children' of adopted children"; (2) under the common law of Pennsylvania an adopted child or children were not included within testamentary gifts or bequests to a "child" or "children"; (3) the Wills Act of 1917, P. L. 403, sec. 16(b), does not apply to an adopted child who was adopted after the execution of the will.

We have studied the will in the instant case most carefully and must conclude, as the court did in Holton, that it disclosed no intent, expressed or implied, that testator contemplated either the inclusion in or the exclusion from the word "children" of adopted children. The will is completely silent on this point.

Our courts, subsequent to Holton, have held that persons adopted after the date of a testator's death by persons other than the testator are not included in gifts to the children or issue of such adopting individuals: Fownes Trust, 421 Pa. 476 (1966); Pennington Trust, 421 Pa. 334 (1966); Tower Estate, 410 Pa. 389 (1963).

Collins Estate, 393 Pa. 195 (1958), appears to be at variance with the well-established rule laid down by our courts. In that case, testator died in 1921, leaving a will executed in 1912. The court held that in the context of the Collins will, the word "descendants" was intended to include persons to whom property

descended under the intestate laws and, therefore, included children who were adopted after testator's death. Collins was distinguished and held to be inapplicable in Holton Estate, supra, by Mr. Justice Jones, who also wrote the opinion in Collins.

Mr. Ginsburg seeks to have us set aside the well-entrenched Pennsylvania rule of law with respect to the inheritance rights of adopted children. He relies in a large measure upon the fact that the courts in a number of other jurisidictions appear to have modified their rulings to include adopted children when the beneficiaries are designated by language similar to that used by the testator in the present case. We, as a lower court, are duty bound to follow the decisions of the appellate courts of this Commonwealth, not those of other States.

Mr. Ginsburg also urges us to follow the dissenting opinion of Mr. Justice Roberts in Fownes Trust, supra, and to disregard the holding of the majority of the court in that case. This we cannot do. We are bound by the decisions of the majority of our Supreme Court, not the minority. If a rule of law enunciated by a majority of the justices of that court is to be changed, it must be done by them, not by us.

Testator's intent is the polestar and must prevail: Burleigh Estate, 405 Pa. 373 (1961). When Harry D. Holloway, testator, executed his will in 1938, and also when he died in 1939, the law in this State was crystal clear that if his son William adopted a child after his father's death, this child would not take under the language used by him in his will. To award his estate to this 67-year-old adopted child would be an obvious and unwarranted subversion of testator's clearly expressed intention.

Subsequent to the audit in the present case, our attention was directed to Chambers' Estate, 438 Pa. 22, (1970), in which our Supreme Court, in a four-to-three

decision, held that a gift to the "children" of the daughter of a testator who died in 1933, leaving a will executed in 1930, included William McGill, a child adopted by the daughter when he was two years of age, several years after her father's death.

We have studied this opinion carefully and have concluded that it is inapposite. The conclusion of the majority of the court was based largely on the fact that testator's daughter had adopted Paul, a recently born infant, in 1929, more than a year before the will was executed. This child died in September of 1931, while testator was still alive, at the age of two years and four months. The court found that when the will was written testator knew that his daughter could not bear children and that she had previously adopted an infant child. Mr. Justice Jones, in the majority opinion, discussed testator's use of the word "children" in his will and said:

". . . Because of the factual situation in 1930, when the will was written, the only natural interpretation that could conceivably be given this bequest is that the testator intended to provide for his adopted grandson, Paul McGill, and for any other children adopted by Hazel [testator's daughter] in the future. Any other explanation would not only be absurd under the facts of this case, but would render the bequest nugatory. A testator is presumed not to have included mere surplusage in his will. Benedum Estate, 427 Pa. 408, 415-16, 235 A. 2d 129, 133 (1967). By his use of the plural noun, 'children,' the testator evidenced an intent to include in his bequest any child or children which Hazel might have in addition to the one child, Paul, who had already been adopted. Since the testator knew that Hazel could *only* have additional children by adoption, he *must* have intended to provide for these children. The provision for Hazel's

'children' makes utterly no sense unless it was intended to include after-adopted children."

The opinion concluded with the statement that:

". . . All these facts make it clear that the testator in the instant case was a concerned and devoted father and grandfather who wished to provide for Hazel's children, regardless of any *legal* distinctions drawn between relationship by adoption and relationship by blood. . . ."

There is a vast difference in the factual situation existing in Chambers and that which we find in the present case. William Evans Holloway, testator's son, was clearly capable of begetting children, as he was the father of twin children, who predeceased him, by his first wife, Regina. In Chambers, the claimant was a child of tender years when he was adopted by decedent's daughter in 1937. She raised him and lived for almost 30 years after the adoption. In our case, the claimant is a woman who was over 66 years of age when she was adopted by William less than a month before he died.

We repeat that we are of the opinion that the instant case is clearly controlled by Holton Estate, supra. We are confirmed in this belief by the clear distinction drawn by Mr. Justice Jones between Chambers and Holton in the following language found in his majority opinion:

". . . However, we made it perfectly clear in that case [Holton] that a prerequisite to the application of the quoted rule is the *absence* of any indication of what was the testator's *actual* intent. In Holton Estate, we found *no* such indication on the following facts: the will provided for the testator's son, Howard, and for Howard's children; Howard's wife, not Howard, was incapable of having children; and, no children were adopted by Howard until almost four

years *after* the testator's death. On those facts, it would be equally plausible to either find that the testator did or that he did not intend to include adopted children in his will. Accordingly, we were forced to resort to the legislative rule of construction in the Act of 1917."

Likewise, in our case, the will provides for testator's son, William, and for William's children. William was capable of having children; no child was adopted until less than a month before he died and almost 30 years after testator died; and there is nothing in the will to permit a finding that testator intended to include adopted children.

The claim of Evelyn Williams Hay as a remainderman will, therefore, be dismissed and the balance of principal and interest in this trust will be awarded to the trustees of the residuary trust.

Frank F. Truscott, one of the trustees and accountants, died on December 5, 1969, and letters of administration were granted to Otis W. Erisman and The First Pennsylvania Banking and Trust Company. We are informed that an account has been filed for the residuary trust, of which Mr. Truscott was also a trustee, and that at the audit of that account the court will be asked to appoint a substituted trustee for him. . . .

And now, May 12, 1970, the account is confirmed nisi.

OPINION SUR EXCEPTIONS TO ADJUDICATION

SAYLOR, J., October 28, 1970.—Evelyn Williams Hay, as an adopted child of William Evans Holloway, life tenant of the trust created in item 8 of the will of Harry D. Holloway, has filed exceptions to the adjudication on the trustees' account whereby principal was awarded to the trustees of the residuary trust because of the failure of issue surviving the life tenant

upon his death on December 3, 1968, at the age of 78 years. The claimant was married and was 66 years of age when by decree of a California court she was adopted by the life tenant and his wife on November 4, 1968.

Testator's will was executed on June 25, 1938. Therefore, the claimant was adopted 30 years after such execution and 29 years after the date of testator's death which occurred on March 15, 1939.

In item 8 of his will, testator named as remaindermen of the trust established for his son, William Evans Holloway, his living issue and provided that in the event his son died without leaving issue the corpus of the trust was to become part of the residuary trust. As the claimant is not issue or a natural child of the life tenant, she must qualify as a child by virtue of her adoption by him if she is to take the remainder of the trust.

Prior to the passage of the Wills Act of 1917 it was the established rule in Pennsylvania that adopted children could not participate in testamentary gifts to children. The Wills Act of June 7, 1917, P. L. 403, 20 PS §228, which was in effect at the time of testator's death, provided in section 16(b) that an adopted child of someone other than testator may inherit if, and only if, such child was adopted before the date of the will "unless a contrary intention shall appear by the will." There was no language in the will showing that testator had a contrary intention. Under the very terms of this act, therefore, the claimant does not qualify as a "child" let alone as "issue."

Section 14(6) of the Wills Act of 1947, even if applicable, does not make the claimant eligible as an adopted child, although it alters the law by providing that an adoptee is qualified if the adoption preceded the death of testator and not merely the execution of

the will. The legislature in imposing the new qualification did so to avoid the possibility of adoptions made for the sole purpose of preventing a gift over in default of issue.

Under the facts, the statutes and the decisions of the courts, the claimant does not qualify as issue or as a child of the deceased life tenant. The learned auditing judge fully considered the decisions apposite to the facts in this case and correctly applied the law of this State on the subject. He properly refused, as suggested by the exceptant, to apply the law of another State or to follow the alleged trend of the times to broaden the inheritance right of adoptees.

The award of the principal to the trustees of the residuary trust was made in accordance with the law of Pennsylvania.

The exceptions are dismissed and the adjudication is confirmed absolutely.