## Ingle Estate

*D. M. Swope,* for exceptant.
*Franklin R. Bigham,* contra.
*Donald G. Oyler,* auditor.

MacPHAIL, P. J., July 26, 1974.—In this case we have before us a holographic will. The personal representative filed a first and final account and a statement of reasons why a schedule of distribution could not be approved. An auditor was appointed and his report was filed. Thereafter, an exception was filed to the auditor's report by Joyce Ingle Pogue. The exceptant also requested an additional hearing before the auditor. The auditor held an additional hearing and filed a supplemental report reaffirming his previous findings and conclusions and setting forth an account and a proposed schedule of distribution. Pursuant to Local Rules of Court, the exceptant renewed her exception to the auditor's report and the matter was

listed for argument. We now have the disposition of that exception before us.

The Decedent's will reads as follows:

"The last Will and testament
Of William Lelewllyn Ingle. Deciest?
I William L. Ingle am in good state
of mind at this Date. Oct. 24th Day
Year 1963.
I W. L. Ingle, appoint Joyce E. Ingle as
Executor of My Estate.

She Joyce Ingle shal draw her Percentage
as an Executor of this Estate Pluss ½ of all
the said sum.
First all Debts shal be Paid in Full.
Then My Bequest be that the
Remainder Be Devided among the
Said Partyes.

Francis Altice Hudnell Speelman
Janet A. Ingle
Loyd Altice Jr.
William L. Altice
Rock Chaple Church And
Who Ever beith with me at the
time of Death shall receive
Equal amounts as the oathers
of My Estate. . . . (irrelevant language and
the signature of the testator follows)."

By virtue of the auditor's findings, he awarded to the exceptant, Joyce Ingle Pogue, one-half of her commissions as executrix as her portion of decedent's estate. She claimed before the auditor and claims now that she is entitled to one-half of decedent's estate.

The question in expounding a will is not what testator meant, but what is the meaning of his words. " ' "The testator's intention must be ascertained from the language and scheme of his will." ' ": Beisgen

Estate, 387 Pa. 425, 432 (1956). "A testator's intent must be taken from the meaning of his words, but his will and a dictionary cannot always solve problems of interpretation": Gibson v. McBurney, 399 Pa. 195 (1960). "The testator's intent must be ascertained by a consideration of the *entire* will which of course must be read in the light of the circumstances surrounding him when he made it": Newlin Estate, 367 Pa. 527 (1951).

An examination of the circumstances surrounding testator when he wrote the will reveals the following:

Decedent was married twice; William I. Ingle and Janet A. Ingle Wallace are children of the first marriage; Joyce Ingle Pogue was born of testator's second marriage; testator's second wife died May 19, 1960; decedent's will was written by him and in his own hand on October 24, 1963; from 1962 to 1964, Francis Altice Hudnell Speelman lived with testator in a meretricious relationship; Lloyd Altice, Jr. and William L. Altice are children of Joyce Ingle Pogue and grandchildren of testator; although Joyce Ingle Pogue visited with and cared for her father on a regular basis following the death of her mother, neither she nor anyone else resided with testator from 1964 until the date of his death; and in 1970 testator changed the beneficiary designated on an insurance policy of substantial size from his daughter, Joyce Ingle Pogue, to the personal representative of his estate.

Next, we proceed to an examination of the scheme of decedent's will. First, he designates the executrix and provides that she shall receive something in addition to her normal commissions. Then, he distributes his estate by beginning, "*first* . . ." he continues "*then* . . ." He concludes (and we think significantly) that whoever is caring for him at the time of his death shall receive "equal amounts as the oathers of my estate." It

is quite apparent to us that by the use of those words testator knew he was limiting the distribution of his estate to the five designated beneficiaries, because, from a practical standpoint, there would be no other way that anyone living with him at the time of his death could receive an *equal* amount "as the oathers."

While it may not seem fair to the exceptant that her share of the estate is so small, we note that decedent's only son received nothing under the will and that the exceptant's two children *did* inherit under the will. We are also mindful of testator's action with respect to the change of beneficiary on his life insurance policy. In any event, whether the distribution is fair or unfair, no rule regarding wills is more settled than the great General Rule that the testator's intent, if it is not unlawful, must prevail. . . . it is not what the Court thinks he might or would or should have said in the existing circumstances, or even what the Court thinks he meant to say, but what is the meaning of his words": Benedum Estate, 427 Pa. 408 (1967).

In summary, the circumstances surrounding testator at the time he wrote his will, the scheme of the will and the plain meaning of the words of the will convince us that testator not only gave, but intended to give, to the exceptant one-half of her allowable commissions as executrix as her portion of his estate.

## FINAL DECREE OF COURT

And now, July 26, 1974, the exceptions to the auditor's report are dismissed. The account set forth in the auditor's report is confirmed. The schedule of distribution as set forth in the auditor's report is approved and distribution is directed in accordance with the provisions thereof.