# Miller et al., Appellants, *v.* Bower.

*Wills—Construction—Subsequently acquired real estate — Bequest of "Mortgages and money and personal property"—Conversion of mortgages into real estate—Intestacy as to real estate.*

1. It is absolutely necessary in order that a will may be construed as operating upon subsequently acquired real estate that an intent on the part of the testator that it should so operate shall affirmatively appear in the will itself.

2. Testatrix by will, after providing for the payment of her debts and funeral expenses and giving certain specific legacies, gave to her sister the interest on certain mortgages during her life and provided that after her death "all my mortgages and money and personal property are to be given to" another sister.   At the time of the execution of the will testatrix owned no real estate, but sub-

sequent to its execution she converted all of her mortgages, except one for $1,000 and applied the money realized thereon to the purchase of certain real estate, of which she died seized. Upon a bill in equity for a partition of the real estate plaintiffs, as heirs at law of testatrix, contended they were entitled to the same on the ground that it was not covered by the bequest above quoted; the court below held that testatrix intended to dispose of her entire estate and that by the use of the words referred to she intended to pass title to all property of any kind which she owned at the time of her death, including real estate and dismissed the bill. *Held,* the words were insufficient to pass title to the after-acquired real estate.

Argued Jan. 11, 1918. Appeal, No. 178, Jan. T., 1917, by plaintiffs, from decree of C. P. No. 2, Philadelphia Co., Dec. T., 1915, No. 2149, dismissing bill in equity, in case of Paul W. Miller and Louise Wolf Miller, his wife; Martin L. White and Lynda Miller White, his wife; William Sherman and Laura Miller Sherman, his wife; and Fern Rock Methodist Episcopal Church, of Philadelphia, v. Mary Louisa Miller Bower. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ. Reversed.

Bill in equity for partition of real estate. Before WESSEL, J.

The opinion of the Supreme Court states the facts.

The court dismissed the bill. Plaintiffs appealed.

*Errors assigned* were various rulings of fact and law and the decree of the court.

*G. Albert Smyth,* with him *John E. Gensemer* and *Edwin S. Ward,* for appellants.—The words "all my mortgages and money and personal property" used in the will did not include the real estate: Blackstone v. Blackstone, 3 Watts 335; Hoke v. Herman, 21 Pa. 301; Harshaw v. Harshaw, 184 Pa. 401; Gibson's Est., 57 Superior Ct. 283; Arnold's Est., 240 Pa. 261; Widener v. Beggs, 118 Pa. 374; Levy's Est., 161 Pa. 189; Watson

v. Martin, 228 Pa. 248; Bruckman's Est., 195 Pa. 363; Kemerer's Est., 251 Pa. 282; Howe's App., 126 Pa. 233.

*Fletcher W. Stites* and *Charles H. Edmunds,* for appellee.—No testator is presumed to die intestate, as to any part of his property, if the words of the will will carry the whole estate: Reimer's Est., 159 Pa. 212; Stehman v. Stehman, 1 Watts 466; Little's App., 81 Pa. 190; Raudenbach's App., 87 Pa. 51; Graham v. Knowles, 140 Pa. 325.

If possible a will must be so construed as to avoid a partial intestacy, unless the contrary is unavoidable: Appeal of Boards of Missions of U. S., 91 Pa. 507; Wambaugh's App., 169 Pa. 61; Woodside's Est., 188 Pa. 45; Golz's Est., 8 Pa. Dist. Rep. 647; Findlay v. Riddle, 3 Binney 139.

The law prefers a construction that will prevent a partial intestacy to one that will permit it, if such a construction may be reasonably given: Given v. Hilton, 95 U. S. 591.

Under the will the language of the testatrix disposed of her entire estate: Long v. Paul, 127 Pa. 456; Jacob's Est., 140 Pa. 268; Arnold's Est., 240 Pa. 261; Wright v. Shelton, 18 The Jurist 445; Smith v. Davis, 1 Grant 158; Appeal of Boards of Missions of U. S., 91 Pa. 507; Hofius v. Hofius, 92 Pa. 305; Sweitzer's Est., 142 Pa. 541; Reimer's Est., 159 Pa. 212; Watson v. Martin, 228 Pa. 248.

OPINION BY MR. JUSTICE STEWART, February 25, 1918:

When the will which is the subject of the present controversy was executed, April 25, 1904, the testatrix, Matilda Miller, a single woman, owned no real estate whatever, but was possessed of considerable personal property, mainly mortgages which she estimated in her will to be of the value of at least $5,000, but which, according to statement accompanying and proved as part of the will, seems to have amounted to upwards of $7,000, a deposit

in bank of undefined amount, and some personal belongings. It will help to a better understanding of the dispute were we here to reproduce the will. It reads, "My last will and wishes are after my debts & funeral expenses are paid my Brother Louis Miller (deceased) heirs receive five dollars my Brother John C. Miller or heirs receive five dollars. I give this amount knowing that both Louis & John C. Miller & their families have full and plenty and not in want. To my sister Mary Louisa Miller Bower as soon as possible after my death two thousand dollars. To my sister Amelia Miller the interest of mortgages as long as she lives the mortgages will amount to at least five thousand and the interest clear of taxes will be nearly two hundred and fifty dollars and she is to have the interest when due on mortgages and not to wait yearly for the money and she may collect the interest herself to save the expense of a collector and after the death of my sister Amelia Miller all my mortgages and money and personal property are to be given to my sister Mary Louisa Miller Bower for herself and two children Louisa Miller Bower and Matilda Miller Bower to invest as she thinks best for herself & two children above named should Amelia Miller outlive them all then she is to have all, should their be any trouble with the partys holding the mortgages they can be invested to better advantage both Mary Louisa Miller Bower & Amelia Miller can together make the investment but the amount must be invested to be held for Mary Louisa Bower and her two children Louise Matilda Miller Bower, Matilda Miller." (signed) "Matilda Miller."

Subsequent to the execution of the will the testatrix converted all her mortgages, except one for $1,000, and applied the money realized therefrom in the purchase of certain purparts of real estate of which she died seized, November 25, 1908. Amelia Miller, sister of testatrix, and legatee under her will, died May 5, 1913, leaving a will by the terms of which her entire residuary estate

was given in equal shares to the appellants herein. Holding to the view that the change in the property bequeathed under the will of Matilda Miller from mortgages to real estate, prevented the operation of the provisions of the will, and that as to the real estate with which testatrix died seized she died intestate, the appellants as heirs of law of Matilda Miller and devisees as well of a deceased heir (Amelia), filed their bill on the equity side of the court below, January 3, 1916, praying for a partition and division of the real estate of which the testatrix had died seized, and which, since the death of the testatrix, had been under the management of the defendant, Mary Louisa Miller Bower, sister and legatee as well of the testatrix, and an accounting by her of the rents received from the real estate. In her answer the respondent, Mrs. Bower, admits the material facts averred in the bill, but asserts her right notwithstanding, under the will of testatrix, her sister Amelia to whom was given a life interest in the mortgages having died, to the whole and exclusive enjoyment of the real estate in fee simple of which testatrix had died seized. There was entire agreement as to facts, and the question dividing the parties was resolved into a pure question of law arising out of the construction of the will of Matilda Miller. The lower court upon a review of the case reached the conclusion that the testatrix by her will of April 25, 1894, intended to and did dispose of her entire estate; that by use of the words "mortgages, money and personal property," in connection with the other language contained in the will, she intended to pass title of property of any nature or kind whatever which she owned or in which she had an interest at the time of her death; that there was no intestacy, but that the real estate of which Matilda Miller was seized at the time of her death passed to the defendant and her two children, subject to the estate therein of the sister Amelia now deceased. From the decree so entered we have this appeal.

The question raised is a very narrow one; whether the

will of this testatrix operates upon the real estate ac-
quired by her subsequent to its execution.   The single
question it presents is, what was testatrix's intention
with respect to this after acquired land of which she died
seized, as expressed in her will?   If no intention with
respect to its disposition can be gathered therefrom then
it necessarily results that as to it she died intestate, and
such property descended to her heirs at law including
these appellants who would then have standing to de-
mand partition of the property.   It is absolutely neces-
sary in order that the will may be construed as operating
upon subsequently acquired real estate that an intent on
part of the testatrix that it should so operate shall af-
firmatively appear in the will itself.   To hold otherwise
would be to give to the will, in itself considered, opera-
tive elements which were not in it before;  and when
parol evidence is introduced to make appear an intent,
not expressed, the value of such parol evidence is just
what it would be in an effort to convey real estate by the
same method.

The time was when after acquired real estate was not
and could not be made the subject of testamentary dis-
position without a subsequent republication of the will:
Girard v. Philadelphia, 4 Rawle 323.   The Act of April
8, 1833, P. L. 250, followed close upon this decision.   By
the tenth section of this act it is provided—"That the
real estate acquired by a testator after making his will,
shall pass by a general devise, unless a contrary inten-
tion be manifest on the face of the will."   To this day
that remains the law, though it may now receive a wider
application than was foreseen as likely to result.   One
effect of it is to give the words "general devise" when
they occur in a will, the import and significance of an
express intent on the part of the testator to dispose of
after acquired real estate.   By "general devise" is to be
understood a testamentary disposition of real estate
without qualification as to tenure.   Evidently the ap-
plicability of the act in any given case depends on

whether the will under consideration contains a general devise of land.   If it does, and no contrary intent appears after acquired real estate is included in the devise. Applying this test to the will of the testatrix, does it contain any general devise of land?   Strictly speaking it contains no devise at all, for the word devise correctly used applies only when land is the subject of the testamentary disposition; but it has a ·popular meaning which includes every species of property, and this wider meaning is allowed when it is made clear that it was in that sense the testator employed it.   The will in question was written by the testatrix herself and bears sufficient evidence that the writer was uninformed as to the distinction the law makes between the words devise and bequeath.   The law allows it to be only fair in such case to reject the construction that would, for no other reason than the use of technically inexact words, restrict the testamentary disposition to less than was intended. Passing this point, however, and assuming that by the word bequeath where it occurs in the will the testatrix meant devise—and there is much in the circumstance attending the making of the will and the will itself to support this view—is any general devise within the meaning of the act to be found in the testatrix's will.   It is unquestionably true that confining the operation of this will to the purely personal estate with which it exclusively deals, it is absolutely free from any ambiguity, and admittedly disposes of all the estate the testatrix then owned.   What justifying pretext can there be under such conditions for deriving from it an implied intention to dispose thereby of subsequently acquired real estate? A case very much in point though arising in an altogether different proceeding is the appeal of Price et al., 169 Pa. 294.   We quote from the opinion as delivered by McCollum, J., p. 300—"We think the writing to which this contention relates does not comprehend the disposition of the after acquired real estate and that, as before stated, the directions in it refer exclusively to the dis-

tribution or division of the writer's personal effects. The presumption that he did not intend to die intestate as to any portion of his property cannot prevail against the clear import of the paper he prepared as expressive of his purpose regarding the disposition at his death of the effects he might leave. We discover nothing in it which deprives his only heir of her rights under the intestate laws in the real estate of which he died seized." It only remains to point out a feature in the case of Jacobs' Est., 140 Pa. 268, a case much relied upon by the appellee, which distinguishes it from the present one. In that case there were two funds for distribution, one arising out of the sale of personalty and one from the sale of after acquired realty. The testator's will, after giving several pecuniary legacies and one or more specific, disposed of the residue of the estate in the following manner—"The remainder and residue of my money I give and bequeath to the Hospital of the Protestant Church in Philadelphia." The will was silent as to any real estate, for the reason as stated in the opinion, that when the will was executed testatrix owned none; what she had at the time of her death had been acquired subsequent to the date of the will. The heirs claimed the fund arising from the sale of the real estate upon the ground that as to it testatrix had died intestate. The court held that the word "money" as there used by the testatrix in the residuary clause of the will was the equivalent of the word "property"; and that the testatrix employed it as indicating property of every description. Under this construction it may be that the residuary gift there was the equivalent of a "general devise" which, as we have seen, would meet all the requirements as to evidence of the intention to devise subsequently acquired land; but this case does not so decide, nor do we know of any that does. The case is inapplicable here because of the fact that there the court derived from the language of the will an intent to dispose of after acquired realty, while

here it is impossible to reach a like conclusion regard being had solely to the written will.

It follows that the decree must be reversed.  It is now so ordered, and it is further ordered that the petition of the appellant for partition of the real estate be reinstated with procedendo.