Braman Estate.

574

Argued January 9, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

rear-gument refused November 26, 1969.

*William W. Caldwell*, with him *Arthur C. Dale*, and *Caldwell, Fox & Stoner*, and *William S. Keown*, of the New Jersey Bar, for appellant.

*Eugene W. Lederer*, with him *Gill, Lederer & Sharp*, for appellee.

*William W. Litke*, with him *Litke, Gettig, Flood & Geiser*, for appellees.

*Edward L. Willard*, for executor, appellee.

OPINION BY MR. JUSTICE JONES, May 9, 1969:

This appeal presents a narrow, although important, problem of will construction.

Ruth G. Braman [decedent], a Centre County resident, died testate on March 13, 1963, survived by a spinster sister, Mary Goddard, who subsequently died February 25, 1964. Decedent's will, executed February 23, 1961, gave a life interest in her entire residuary estate to her sister, Mary Goddard, and directed that, upon Mary Goddard's death, the residuary estate be

distributed in a specified manner to certain historical, religious, education and charitable institutions and to three named friends.[1]

In her will dated July 15, 1938, Miss Goddard gave to decedent "or her estate" her entire residuary estate. Miss Goddard having survived decedent, the question arose upon her death as to the manner of distribution of her residuary estate. The Orphans' Court of Centre County decided that decedent's estate was the proper distributee of that residuary estate. 4 Centre County L.J. 91 (1966). An appeal taken from that decree to our Court was discontinued by agreement of the parties.

The instant controversy is between Helen M. Harbeson, the sole heir at law and next of kin of both decedent and Miss Goddard, and the residuary legatees of the decedent.[2] The crux of this controversy is whether Miss Goddard's assets are distributable under the will of decedent or whether they are distributable to Miss Goddard's heir at law and next of kin by way of intestacy.

In considering this appeal, we initially note that decedent, both at the time of the execution of her will *and* at the time of her death, had no interest whatsoever in Miss Goddard's assets or property. She simply had an expectancy that, if she survived her sister, she would receive the residuary estate.[3] The bequest and

---

[1] A first codicil to this will, dated May 9, 1961, merely corrected the name of one of the legatees. A second codicil, dated July 11, 1961, identified the use to be made of the gift to one of the charities, and a third codicil, dated November 14, 1962, merely added another friend to whom a pecuniary legacy was given.

[2] The assets of Miss Goddard's estate plus increments thereon total approximately $70,000.00.

[3] ". . . an expectancy is the chance of obtaining property by inheritance or by will from a person now living. Such chances are not in themselves rights in property." 6 Williston, Contracts, §1681A, at 4745 (Rev. Ed.) Cf., Restatement, Property, §153, comment c.

devise of Miss Goddard's residuary estate was to go to decedent *only* in the event Miss Goddard predeceased decedent, an event which never occurred. While Miss Goddard did provide for the contingency which did occur, i.e., decedent's death prior to that of Miss Goddard, her designation of the "estate" of decedent as the remainderman and the eventual distribution of Miss Goddard's assets to decedent's estate does not foreclose an inquiry into the manner of distribution of these assets.[4] The court below held that Miss Goddard's assets were distributable under the provisions of decedent's will and from that decree the present appeal was taken.

Section 14 of the Wills Act of 1947 (Act of April 24, 1947, P. L. 89, §14, 20 P.S. §180.14), under "Rules of Interpretation," provides, inter alia: "In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules: (1) Wills construed as if executed immediately before death. Every will shall be construed, with reference to the testator's real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator." Assuming, arguendo, that no contrary intent appears in decedent's will, application of this rule of construction would require that we construe decedent's will as if it had been executed immediately before her death on March 13, 1963, at which time decedent had no interest—vested or contingent, legal or equitable—in the assets of Miss Goddard's estate. "It is presumed that a testator intended to dispose only of property which he owned, unless the language of the will, or the circumstances of the case as shown by

---

[4] Under decedent's will, *her entire estate* was placed in trust for Miss Goddard for life. Appellant pertinently queries whether decedent intended to fund Miss Goddard's life estate with assets that could not be obtained until Miss Goddard's death.

proper evidence, indicate otherwise. So, the will should not be given the construction that the testator intended to dispose of property not owned by him unless the language he used conclusively evidences such a purpose, or is open to, or fairly susceptible of, no other construction." 96 C.J.S. Wills, §751. See: 94 C.J.S. Wills, §76.

A will is a medium by which a person can dispose of property, real and personal, after his death. During his lifetime, a person cannot give or dispose of property which he does not own or in which he has no interest; no more so can a person make a post-mortem disposition of property which at the time of his death he does not own or in which he has no right, legal or equitable. See: *Williams Estate*, 349 Pa. 568, 37 A. 2d 584 (1944). Only property which is descendible is devisable.[5] See also: *In re Jamieson Estate*, 374 Mich. 231, 132 N. W. 2d 1, 3 (1965).

We recognize, of course, the well-settled principles that generally the purpose of a residuary clause in a will is to pass the *whole* estate and to avoid an intestacy and that our duty is to accomplish that purpose, if possible (*Fuller's Estate*, 225 Pa. 626, 74 A. 623

---

[5] ". . . if the testator has not yet died, a legatee named in his will has no interest in the testator's property, even though the testator is unlikely to change his will and even though he is hopelessly insane so that he will be unable to change his will." Restatement 2d, Trusts, §86, Comment a. It should be noted that whether one has a transmissible interest or an expectancy depends on whether the contingency of taking rests upon the capacity to take. For instance, if T gives a remainder to A, should B die without issue, such an interest is transmissible by A, even during T's lifetime because the contingency does not affect A's capacity to take, the contingency being whether B dies without issue, not whether A is living or dead. See: *McCreary Trust*, 354 Pa. 347, 352, 47 A. 2d 235 (1946) ; *Packer's Estate (No. 2)*, 246 Pa. 16, 92 A. 70 (1914) ; *Moss Estate*, 80 Pa. Superior Ct. 323 (1923) ; *Kelso v. Dickey*, 7 W. & S. 279, 284 (1844). Cf.: *Herr Estate*, 48 Dauphin Cty. R. 92 (1939).

(1909)) and that a *general* residuary clause carries every interest, known or unknown, immediate or remote, unless such interest is clearly excluded *(Ingham's Estate,* 315 Pa. 293, 297, 172 A. 662 (1934)). However, these principles do not apply until it has been demonstrated that the testator at the time of death actually had an interest, recognized in law or in equity, as opposed to an expectancy in the property; absent such an interest, post-mortem disposition of the property cannot be exercised. Moreover, this interest must exist at the time of death rather than at the time of distribution: *Brothers Estates,* 156 Pa. Superior Ct. 292, 295, 40 A. 2d 156 (1944). "A legatee who dies before the testator cannot devise or bequeath property which he would have taken under the will of such testator if he had outlived him. The same is true in the case of a prospective heir who predeceases the ancestor from whom he would have inherited. In both cases, the legatee and heir had a mere expectancy prior to the testator's and ancestor's death, and if such expectancy does not materialize into fulfillment, it never becomes a vested interest that can be passed by a will. . . . Rights which arise at or after testator's death and which never belonged to him during his life. . . cannot be bequeathed." 1 Bowe-Parker: Page on Wills, §16.2, at 751, 754. See also: *Id.* at §16.17; Thompson, Wills, §40, at 79 (3d Ed.).

The court below, although recognizing that the decision was not binding in the instant situation, referred to the following language of Mr. Justice McBride in *Bigony Estate,* 397 Pa. 102, 105, 152 A. 2d 901 (1959): "Unquestionably, if the will contained only the general residuary clause without the restrictive words 'consisting of,' all of the testatrix's property, including property or funds of any kind received *after* or before her death under the Intestate Act from the estate of her husband [sic] would pass under this clause."

(Emphasis added)  Our Court interpreted the language of the *Bigony* will as indicative of an intent to limit the property disposed of by the residuary clause to assets known to the testatrix and which she carefully described.  In *Bigony*, the testatrix outlived her husband by thirty-seven years and the after-acquired assets consisted of the balance of one-half of a trust fund set up by the husband which was declared invalid after testatrix' death as well as a $5,000.00 intestate allowance from the husband's estate.  While these assets were not realized until three years after testatrix' death, both at the time of the execution of her will and at the time of her death, she did have an interest in these assets, unlike the factual situation in this appeal.  The language in *Bigony* must be read in the light of its factual matrix and affords no comfort to appellee's position in this litigation.

The phrase "after-acquired property" employed in connection with decedents' estates involves a twofold concept: (1) property acquired by a testator between the time of the execution of his will and the time of his death; (2) property acquired after the death of the testator.  As to the former, there is no doubt that a testator can dispose by will of property which he did not own at the time he executed his will but did acquire prior to his death,[6] since under the Wills Act of 1947, supra, as amended, after-acquired property passes by a general devise or bequest in the absence of a contrary intent found in the will.  See: *Bigony Estate,* supra.

As to property acquired after the death of the testator, the instant appeal presents a question, apparently, of first impression.  The lack of case law

---

[6] See:  *Lusk's Estate,* 336 Pa. 465, 467, 9 A. 2d 363 (1939) ; *Miller v. Bower,* 260 Pa. 349, 354, 355, 103 A. 727 (1918).  Cf: *McGlathery's Estate,* 311 Pa. 351, 166 A. 886 (1933).

on this subject may well be attributed to a general recognition that a testator cannot dispose of property in which at the time of his death he has neither ownership nor interest of any kind.

The ruling below was based almost entirely on the belief of the court that there was no sound reason why the testatrix under the instant circumstances should not have the right to make disposition by will of property acquired after death. It must be noted that the court did not bottom its decision on any intent to be found either in Miss Goddard's will or that of decedent. As to the latter, the court below stated: "The intention of the testatrix appears clear. She does not qualify the language by restricting her residuary estate only to that part which she owned at the exact moment of her death, nor does she affirmatively indicate that her estate shall include amounts added thereto subsequent to her death. It would be pure fiction and a perversion to contend that her intention had anything to do with creating an intestacy permitting an heir not mentioned in her will to inherit. For this reason, we believe this case does not involve the determination of the intention of the testator."

Beginning with the proposition that it did not "shock the court to have the principles of orphans' court law or the dispository provisions of a will applicable to assets coming into an estate after death of the person creating said estate," the court analogized these assets to dividends declared after a testator's death, recoveries in death actions, medical payments, Social Security, Veterans' Administration and retirement benefits which come into a decedent's estate after death. In our view, these analogies are unsound. In each instance cited by the court below the testator had *at the time of his death* an interest or ownership in assets from which flowed these post-mortem benefits. Whether such an interest or ownership arose by reason

of stock ownership, by statute as in the case of recovery in death actions, by contracts—insurance or otherwise—or by operation of law, to treat such post-mortem benefits as estate assets does not contraindicate the soundness of the rule that a testator cannot dispose of property in which he lacks any interest, legal or equitable, at the time of death.

We have examined the cases in other jurisdictions which gave "comfort in support of [the court's] position"; we find these cases entirely inapposite. We believe that the court below erred in its conclusion that assets springing from Miss Goddard's estate and not owned in any sense by decedent at the time of her death were part of her estate which passed under the terms of her will.

Furthermore, we fail to find any other basis upon which this property might pass under decedent's will.

It is important to note that there is no evidence or reasonable inference that decedent knew of the contents of her sister's will. It seems evident that when decedent planned the testamentary disposition of her property she thought in terms of her *own* property and not in terms of the property of another.

Moreover, we fail to find within the four corners of Miss Goddard's will any intention on her part that her assets were to be distributed in accordance with the terms of decedent's will, a will about which, so far as this record shows, she had no knowledge. Miss Goddard's will was written twenty-three years prior to the execution of decedent's will. If we are to maintain the integrity of our case law that the intentions of a testator are to be determined from circumstances existing at the time of the execution of the will *(Lewis Estate,* 407 Pa. 518, 180 A. 2d 919 (1962) ; *Woodward Estate,* 407 Pa. 638, 182 A. 2d 732 (1962)), then we must conclude that the circumstances existing when Miss Goddard drew her will do not reflect any inten-

tion to provide for ultimate disposition of her property under the testamentary scheme of decedent's will.

An analysis of Miss Goddard's will indicates a gift of her assets to decedent, if living and, if not living, to decedent's "estate." We find in the word "estate" no such magic as compels the conclusion that Miss Goddard intended a disposition of her assets to those designated as recipients of decedent's bounty rather than to those who would take under the intestate laws. If it had been Miss Goddard's intention that her assets be distributed according to her sister's plan, the burden of such proof rested upon the estate of decedent; absent such a demonstration of proof and on the state of this record, we find no evidence of such an intention on the part of Miss Goddard as urged by the estate.

Decree reversed. Each party pay own costs.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I join in Justice ROBERTS'S dissenting Opinion, but I am compelled to add additional reasons.

The majority Opinion decides for the first time in Pennsylvania's history (1) that any general and all-inclusive residuary paragraph in a will (a) is not a gift of everything a testator owns or thereafter acquires (which she has not theretofore bequeathed or devised), (b) but is a gift of only the property and the property interests which, at her death, she owned or *had a legal or equitable interest therein,* and (2) testatrix died intestate as to any and *all other interests* which were clearly given to her or her estate.

A consideration of analogous principles and prior decisions and public policy, and particularly the language of the wills here involved, will demonstrate the error and fallacy of the majority Opinion. There is a well-settled presumption that a person does not wish or intend to die intestate, and that a general residuary gift carries every and all kinds of property which a

testator owns or ever may acquire at or after his death—both known and unknown. Moreover, every lawyer and layman knows that a testator may lawfully and often does leave in a long testamentary trust, an ultimate gift of principal to grandchildren or issue, some or many or all of whom were unknown to the testator, and can include in such a gift property acquired long after his death which was both unknown or unanticipated. There is and should be no difference in law between those cases and this. Moreover, as Page on Wills well says (§33.50) : "Unless a contrary intention appears from the will, its effect is not limited to property in which testator has an interest in possession, but *includes property in which he has interests in expectancy.*"*

It is hornbook law that testator's intent is the polestar in the interpretation of every will, and unless there is a violation of the law or a public policy, that intent will be sustained by the Court. That intent is to be ascertained from the language of the will. Moreover, it is the meaning of what the testator said, and not what the Court thinks he meant to say but didn't; and it is equally well settled that technical rules or canons of construction will be resorted to only if the testator's language is ambiguous. These tests and pertinent principles are more fully set forth in *Benedum Estate,* 427 Pa. 408, 412-413, 235 A. 2d 129, and the many decisions quoted or cited therein.

The language in the Goddard will is not merely the customary residuary gift, but is exceptionally broad and *directly and explicitly applicable and controlling.* Miss Mary C. Goddard, a spinster sister who survived this testatrix by nearly one year, bequeathed to her beloved sister Ruth, or her estate, her entire residuary estate: "2nd. I give, devise and bequeath to my beloved

---

* Italics, ours.

sister, Ruth G. Braman, *or her estate,** all of my estate, personal, real or mixed, of whatsoever nature and wheresoever situate, in fee simple absolute."

The Majority first ignore and then nullify the clear and explicit language of the Goddard gift to Ruth *"or her estate"* and hold that this very broad, clear and specific gift to her or her (Ruth's) estate is meaningless.

For these reasons, I strongly dissent.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The only issue in this case is whether or not the assets presently in the estate of Ruth G. Braman, which came from the estate of Mary C. Goddard and were not owned by Ruth G. Braman at the time of her death, are to be distributed in accordance with the provisions of her last will and testament or are to be distributed to Ruth G. Braman's heirs because she is deemed to have died intestate with respect to these assets received after death. The majority concludes that because it has not been demonstrated that the testatrix (Ruth G. Braman) at the time of death actually had an interest in this property, it was not possible for her to distribute her expectancy through a residuary clause in her will. It is my view that such a construction is incorrect. I agree with the trial court that "If a will properly controls the disposition of a decedent's assets, even though they are unknown to a testator, what logical reason can be assigned to hold that after-acquired assets should go to beneficiaries that the decedent did not choose to benefit with any other part of her estate? We believe it to be illogical to so hold."

The residuary clause in Ruth Braman's will virtually compels the result reached by the orphans' court because it is so broad and all-inclusive: "All the rest,

---

* Italics, ours.

residue and remainer or my estate of *whatsoever nature and wheresoever situate,* I give, devise and bequeath. . . ." Further, by disposing of the assets from the Goddard estate through the residuary clause, the legal goal of preventing an intestacy is preserved. "In order to avoid partial intestacy, the general rule is that a general residuary clause should be construed liberally so as to pass all of testator's estate which is not otherwise disposed of. . . . Its effect is not limited to property in which testator has a legal estate; but it also includes property in which he has an equitable interest. Unless a contrary intention appears from the will, its effect is not limited to property in which testator has an interest in possession, but includes property in which he has interests in expectancy." 3 Page on Wills, §990. Since all parties agree that Ruth Braman's interest in the Goddard assets was an expectancy and since there clearly is no contrary intent contained in the Braman will, it necessarily follows that these assets should be distributed according to the residuary clause.

It seems to me well within the purposes of the residuary clause to include a situation such as the one presented by the instant case. Many legal formulations of the breadth of a residuary clause indicate its all inclusive nature, unless in some way restricted by the testator. Thus our Court has said: "A catchall residuary clause carries out testator's dominant intent to dispose of everything which he still owns or has a dispositive interest in or general power over— everything not otherwise specifically or effectually disposed of by will." *Jull Estate,* 370 Pa. 434, 438, 88 A. 2d 753, 755 (1952). But the majority seeks to undermine this general applicability by establishing an exception to the effectiveness of the residuary clause: that it cannot dispose of after-acquired property. In my judgment such an exception is artificial and, in

586

the absence of a contrary intent expressed by the testator, such after-acquired items should be distributed through the residuary clause.

Therefore, I dissent.

Mr. Chief Justice BELL and Mr. Justice EAGEN join in this dissent.