## Snyder Estate.

Argued March 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*T. Warren Jones*, with him *MacDonald, Illig, Jones & Britton*, for appellants.

*S. Thaddeus Kwiat*, for appellee.

OPINION BY MR. JUSTICE ROBERTS, June 28, 1972:

This is an appeal from a decree of the Orphans' Court Division of the Erie Common Pleas Court. This decree sustained appellee's objections to an account and

audit statement of the estate of Donald J. Snyder and held that the testator intended the last sentence of the body of his will to operate as a specific rather than a general residuary clause. We believe that the orphans' court's finding was supported by competent and adequate evidence. Accordingly, we affirm.

The testator Donald J. Snyder died on May 23, 1970. His will, executed on January 5, 1967,[1] read as follows:

"Jan. 5/67

"All previous statements and codicils are void. I, Donald Snyder, being of sound body and mind do hereby leave the bulk of my estate less $2000 which is to go to Donald Bull who now lives on Kirsh Road. The money in the credit union and in the banks and my stocks all go to my mother. In case of her death they all go to my niece Mary Lou Britton and my nephew David Florek. This is to be divided equally among the two. My automobile, if I own one at this time, goes to David Florek. My burial sum from my social security goes to St. Stephens Lutheran Church. The money from my insurance policies pays for my funeral. If there is anything left after this it goes to the children of Mary Lou & David.

Jan. 5, 1967
Donald Snyder /s/

"I hereby will $1000 of money to Gladys McClelland."

Appellants, the grandnephew and grandniece of testator, are the "children of Mary Lou & David" to whom the testator refers in his will. Appellants argue that the sentence of testator's will immediately preceding the signature constitutes a general residuary clause. The appellee in this case is Elmer E. Snyder, father of

---

[1] The will was written out by decedent's mother and signed by decedent.

the testator.  Appellee argues that the sentence of testator's will which immediately precedes the signature is to be regarded as a specific residuary clause which bequeaths to appellants only whatever remains from the proceeds of testator's insurance policies, after those proceeds are employed to pay for testator's funeral. The property not specifically devised or bequeathed by testator's will is valued at approximately $13,300, and consists largely of real estate valued at approximately $10,300.

If the portion of the will in question is regarded as a general residuary clause, the property not specifically disposed of by the will would pass to appellants.  However, if the sentence of the will immediately preceding the signature is regarded as a specific residuary clause, a partial intestacy would be created, and the property in question would pass to appellee under the intestacy laws.

The orphans' court found that the testator intended the sentence of the will immediately preceding the signature as a specific residuary clause, directing that appellants should receive only whatever remained from the proceeds of testator's insurance policies, after those proceeds were employed to pay for testator's funeral. Keeping in mind our oft-repeated holding that "the findings of fact of the auditing judge, sitting as a chancellor, which are based on competent and adequate evidence are controlling . . . [on] appellate review,"[2] we do not believe that the orphans' court finding should be disturbed.

In finding that the testator intended the last sentence of the body of his will as a specific residuary clause, the orphans' court reasoned: "[I]t is easily seen

[2] *Faller Estate*, 407 Pa. 73, 77, 180 A. 2d 33, 35 (1962) (quoting from *Pavlinko Estate*, 399 Pa. 536, 541, 160 A. 2d 554, 557 (1960)); see *Snyder Estate*, 368 Pa. 393, 397, 84 A. 2d 318, 321 (1951).

that the decedent in the first sentence of his will states clearly that he intended only to dispose of a portion of his estate. He wrote that 'I . . . hereby leave the *bulk* of my estate. . . .' (underscoring by the court). The word 'bulk' is a common word used daily in regular conversations by millions of people. It has a common meaning. It means 'most of' or 'the main part of'. We must assume that the decedent intended this word in the will to have the same meaning. The decedent's gross estate is in excess of Thirty Thousand Dollars ($30,000), and the major portion not disposed of by his will was his real estate valued at Ten Thousand Three Hundred Dollars ($10,300). Consequently, it can be seen that by his will he does dispose of the 'bulk' of his estate."

The orphans' court also advanced an additional and perhaps even more compelling reason for its finding that the testator intended the sentence immediately preceding the signature as merely a specific residuary clause. The court reasoned: "The audit statement disclosed that the insurance policies in question totaled Nineteen Hundred One and 14/100 Dollars ($1,901.14), which indicates that the decedent wanted these particular funds used to pay for his funeral expenses and the balance of said funds not so used he bequeathed to said minors. If he intended that all his other assets were to go to said minors; i.e., an amount in excess of Ten Thousand Dollars, he would not have written '*If* there is anything left. . . .' (underscoring by the court). Obviously he was referring to a small amount—anything left of his insurance money not used for the payment of the funeral bill."

We believe that the testator's use of the word "bulk", and his employment of the word "if", constitute competent and adequate evidence of decedent's intent that the last sentence of the body of his will be a specific residuary clause.

Nor can it be maintained that the orphans' court was obligated to rely upon the presumption that: "One who writes a will is presumed to intend to dispose of all of his estate and not to die intestate as to any portion thereof. . . ." *Grier Estate,* 403 Pa. 517, 522, 170 A. 2d 545, 548 (1961). In interpreting a will the object is to ascertain the intent of the individual testator who was its author. Presumptions such as the one of intention to avoid intestacy and other canons of construction are to be resorted to "only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain." *Lilley Estate,* 443 Pa. 1, 4-5, 275 A. 2d 37, 38 (1971) (quoting from *Jessup Estate,* 441 Pa. 365, 370-71, 276 A. 2d 499, 502 (1970)) (emphasis omitted). Here the trial court has found that the language of the will evidences, without unresolvable ambiguity, a certain intention, and the trial court's finding as to the testator's intent is based upon competent and adequate evidence. To resort to a general presumption to resolve this controversy would be to lose sight of the fact that it is the intention of the individual testator that is sought to be ascertained.

Accordingly, the decree of the orphans' court is affirmed. Each party to pay own costs.

Mr. Justice EAGEN concurs in the result.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

This appeal presents the often difficult problem of construing a will written by a layman. The Court accepts the lower court's determination that the will of the decedent did not dispose of all of his property, and that he therefore died intestate as to the balance. In so holding, the Orphans' Court Division found that the will contained no residuary clause. I am unable to agree, and respectfully dissent.

Our law has long recognized the presumption that one who writes a will intends to dispose of all his estate and not to die intestate as to any portion thereof. *Grier Estate,* 403 Pa. 517, 522, 170 A. 2d 545 (1961), and cases cited therein. It is the duty of the courts to vindicate that presumption if possible. *Braman Estate,* 435 Pa. 573, 577, 258 A. 2d 492 (1969); *Fuller's Estate,* 225 Pa. 626, 629, 74 Atl. 623 (1909) (wherein the court said: ". . . intestacy is always to be avoided if possible by any fair interpretation of the will.") See also *Restatement of Property,* §243, clause (a), comment *e* (1940). Cf. *Bigony Estate,* 397 Pa. 102, 152 A. 2d 901 (1959). The residuary clause is, of course, the vehicle normally used by testators to avoid intestacy. In holding that there was no such clause in the instant will, it is my view that the Court has, without adequate justification, ignored the presumption.

Towards the end of his will the testator made the statement, perhaps intended as an instruction, that "money from my insurance policies pays for my funeral." The next and concluding sentence provides "If there is anything left after this it goes to the children of Mary Lou and David" (the appellants).

The learned court below felt that it was "obvious" that the decedent did not intend the last sentence to be a residuary clause. He thought it clear that it referred only to any excess of insurance money after paying funeral costs. As I view the will, written as it is in-artistically and without paragraphs,[1] there is no more reason to limit the last sentence (specifically, the words "if there is anything left over after this"), to

---

[1] The will was written for the testator by his mother, because he had a disabled arm. It is undisputed, however, that the signature to the will is his own. A challenge of the testator's father, appellee herein, to the validity of the will was withdrawn in the lower court.

the sentence which immediately precedes it than there is to regard it as relating to all of the prior dispositions.

This Court's opinion in *Bricker's Estate*, 335 Pa. 300, 6 A. 2d 905 (1939), seems to me to be persuasive in the case at bar. There the question was whether the words "The balance, if any, to be divided into ten equal parts between" ten named persons related only to the immediately preceding bequest, or constituted a residuary clause to the entire will. Speaking for the Court in holding for the latter alternative, Mr. Justice, later Chief Justice, Stern said: "A residuary clause is one which covers all of the estate not disposed of after providing for debts and particular legacies and devises. No technical mode of expression is necessary to constitute such a clause. 'Balance' is the vernacular for the legal phrase 'rest, residue and remainder': see Thompson's Estate, 237 Pa. 165, 169; Taylor's Estate, 239 Pa. 153, 163. The word 'balance' in the fifth paragraph of this will must be interpreted as meaning 'balance *of the estate*', there being no reason why it should be restricted to the balance of the fund derived from the items mentioned in the third paragraph: see In re Hayes' Will, 263 N.Y. 219, 188 N.E. 716. Whatever ambiguity exists must be resolved in accordance with the principle that a broad rather than a narrow construction of a residuary clause is favored in order to avoid intestacy, it being presumed that a testator intends to dispose of his whole estate: Fuller's Estate, 225 Pa. 626, 629; Carson's Estate, 130 Pa. Superior Ct. 133, 138." 335 Pa. 303.

The lower court advanced two main reasons for its holding. The first was the use of the tentative word "if" to introduce the last sentence. He thought this could only reflect uncertainty as to the sufficiency of the insurance to cover funeral costs,[2] not uncertainty as to

---

[2] The excess of insurance over funeral expenses was $661.

the existence of a residuary estate, which at the time of death in fact comprised 40% of the whole. This to me is quite unpersuasive; the amount of anyone's residuary estate must in the nature of things be uncertain until death occurs, and there are many clearly written residuary clauses which, as matters eventuate, convey nothing to the legatee. That use of the words "if any" is not antithetical to the purpose of a residuary clause is demonstrated, *inter alia,* by our decision in *Bricker Estate, supra,* 335 Pa. at 303, and *Sorschek Estate,* 422 Pa. 79, 221 A. 2d 131 (1966). Moreover, in the instant case, the testator's estate at the time he drew the will exceeded the aggregate amount of specific bequests by only $3,000; it was solely because of the death of his mother, the other joint tenant to real estate, between the date of testator's will and the date of his own death that the gross residuary estate at testator's death rose to $13,000.[3]

The other reason for the lower court's holding is that it thought the testator had clearly manifested an express intent *not* to dispose of all of his estate by the use of the word "bulk" in the second sentence. This word, said the court, means "most of", but not "all". That this is the common acceptation of "bulk" cannot be denied,[4] but to declare that in a homespun document of this kind the word was deliberately used in order to create a partial intestacy seems to me to attribute

---

[3] The inventoried value of the decedent's estate was approximately $33,400. Of this sum approximately $20,000 consisted of items of property specifically referred to in the will; approximately $13,300 worth of property was not so referred to, and are the assets here in dispute. Of the unspecified property, the major portion was real estate valued at $10,300. At the time the will was executed, the real estate was owned by the decedent and his mother as joint tenants with right of survivorship. The mother predeceased the testator, vesting full ownership in him.

[4] But see Roget's International Thesaurus, §50.3 (1950), indicating that "bulk" can mean "the whole of something".

a semantological sophistication to the testator which is quite out of character with the rest of the will. Surely it is an equally tenable construction to consider the word "bulk" as relating to the specific bequests, which accounted for all but $3,000 (i.e., around 92%) of property owned at the time of writing the will. Thus viewed, the testator was in effect saying:

"I hereby leave the bulk of my estate as follows: [i.e., the four specific bequests, plus instruction as to source of funeral expenses.]

"If there is anything left after this [i.e., disposal of the 'bulk'] it goes to the children of Mary Lou & David."

It is not necessary to take the position that this is the will's manifest intent, but it is at least as reasonable as any other interpretation. In short, the will is ambiguous and unclear as to the meaning of "bulk" and as to the scope of the bequest in the last sentence. It is in just this sort of situation that the presumption against partial intestacy is designed to apply; it is in just this sort of situation that extrinsic evidence may be received to show intent. Such evidence may override the presumption, or confirm it. In the case at bar, the latter would have occurred, for the testimony (which the auditing judge felt obliged to disregard) was, in the words of his opinion, "that the decedent and his father [appellee] were not on good terms and that the decedent was friendly to the minor children, Lynn Christine Britton and Brian Lee Florek [appellants]".

To buttress its holding, the majority relies on the well-known rule that "the findings of fact of the auditing judge, sitting as a chancellor, which are based on competent and adequate evidence are controlling . . . [on] appellate review." This proposition, however, is not here applicable. It pertains to cases in which the auditing judge, as the trier of fact, is required to hear

and review conflicting extrinsic evidence in order to resolve an issue of fact, which might be the testator's intent, or some other question. See cases cited in the opinion of the court, supra, at 403, n.2; see also *Gramm Estate,* 437 Pa. 381, 263 A. 2d 445 (1970) ; *Zeedick Will,* 421 Pa. 44, 218 A. 2d 755 (1966) ; *Abrams Will,* 419 Pa. 92, 213 A. 2d 638 (1965). The rule is, of course, a proper recognition by appellate courts of the role of the judge as a fact-finder, including especially the peculiar opportunity which is his to observe witnesses and determine credibility. The same rules applies to findings by a chancellor, *Fee v. Mickail,* 438 Pa. 439, 265 A. 2d 800 (1970) ; *Cowen v. Krasas,* 438 Pa. 171, 264 A. 2d 628 (1970) ; *Wampler v. Shenk,* 404 Pa. 395, 172 A. 2d 313 (1961) ; or a law judge sitting without a jury, *Lawner v. Engelbach,* 433 Pa. 311, 249 A. 2d 295 (1969) ; *Belmont Laboratories, Inc. v. Heist,* 300 Pa. 542, 151 Atl. 15 (1930) ; 9 Standard Pa. Practice, Ch. 40, §107 (1962). In the case at bar there was no dispute of fact, no issue of credibility; indeed, as noted above, the auditing judge refused to consider extrinsic evidence offered to prove the testator's intent. Such evidence was unnecessary, in the judge's view, in light of his determination that the testator's intent was obvious from an examination of the four corners of the instrument. This is not the sort of "fact finding" which is or should be controlling on appeal; although we should give the auditing judge's opinion due weight, surely an appellate court possesses an equal capacity for determining the meaning of words and interpreting the language of a will from the undisputed factual circumstances. As the Court, speaking through Mr. Justice O'BRIEN, said in *Kemp v. Majestic Amusement Co.,* 427 Pa. 429, 433, 234 A. 2d 846 (1967) : "The facts are not in dispute. The decree of the court below is based on inferences and deductions from the facts. Its con-

clusions, being the result of reasoning, are subject to review and correction by this court. Reilly v. Walker Bros., 425 Pa. 1, 229 A. 2d 457 (1967); Philadelphia Transportation Co. v. Philadelphia Suburban Transportation Co., 382 Pa. 365, 115 A. 2d 233 (1955). This court can competently draw the appropriate inferences and conclusions from the evidence, regardless of the action of the court below."

I would reverse the decree of the court below and award to appellants the full residue of the decedent's estate.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissent.