IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: The John Wilde and     :
Josephine A. Wilde Income Only   :
Protector Trust               :
                                 : No. 39 C.D. 2021
Appeal of: Francis H. Musheno, III  : Argued: April 5, 2023


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE WALLACE                      FILED: October 19, 2023


Francis H. Musheno, III (Musheno) appeals from the December 15, 2020 decree of the Court of Common Pleas of Lycoming County (Common Pleas), which concluded the John Wilde and Josephine A. Wilde Income Only Protector Trust (Trust) was subject to tax under the Inheritance and Estate Tax Act (Act)[1] after the death of John Wilde (Husband) but before the death of Josephine A. Wilde (Wife) (collectively, the Wildes). After careful review, we reverse.

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by Section 36 of the Act of August 4, 1991, P.L. 97, No. 22 (Act 22), 72 P.S. §§ 9101-9196.

# I. Background

The Wildes created the Trust on June 26, 2007. They were the sole donors of the Trust and initially the sole trustees. The Trust assets included the Wildes' personal residence in Loyalsock Township, Lycoming County, and 5,938 shares of stock. The Wildes previously owned the residence as tenants by the entireties and the stock as joint tenants. Under the terms of the Trust, a trustee could exercise broad powers, such as the ability "to borrow or lend any amounts" and "to allot in toward satisfaction of any payment, distribution, or division, pro rata or non-pro rata, any property in [the] estate at the then-current fair market value." Reproduced Record (R.R.) at 44a. A trustee could distribute trust income to the Wildes or, with the Wildes' consent, to various family members including nieces, nephews, grandnieces, and grandnephews (collectively, Family Members). The Wildes named their nephew, Musheno, as their trust protector and successor trustee.[2] The trust protector could distribute trust principal to the Family Members but could not distribute trust principal to the Wildes. *Id.* at 39a.

Although the Trust specified that it "shall be irrevocable," the Wildes retained for themselves as donors the right to amend paragraph 3.1. R.R. at 38a. Paragraph 3.1 provided for termination of the Trust upon the death of both Wildes or the determination by a trustee "at his or her sole discretion, that the continuation of this [T]rust would jeopardize [the Wildes'] eligibility for assistance from any federal, state, or local governmental program." *Id.* at 39a. Paragraph 3.1 also directed the

---

[2] The Wildes named another nephew, Robert Musheno, as successor trust protector and second successor trustee.

distribution of Trust assets upon termination.[3] Primarily, the Trust provided for distributions to the Family Members.

On February 15, 2016, "[i]n consideration for the sum of One Dollar . . . and other good and valuable consideration," Husband assigned his income interest in the Trust to Wife. R.R. at 72a. Husband passed away shortly thereafter on April 9, 2016. Wife filed a Pennsylvania inheritance tax return on October 12, 2017, which reported the Trust's existence but did not disclose any of its assets. The return indicated the Trust assets would be exempt from inheritance tax until Wife also died, citing Section 2111(m) of the Act, added by Act 22, 72 P.S. § 9111(m).

The Department of Revenue (Department) issued a notice of inheritance tax appraisement, allowance or disallowance of deductions, and assessment of tax on April 9, 2018. The Department rejected Wife's reliance on Section 2111(m) and imposed inheritance tax on the Trust assets. Because Wife did not disclose the Trust assets on her return, the Department assigned the Trust a fictitious value of $500,000. The Department imposed a tax rate of 15%, resulting in a tax due of $75,000 plus interest and penalties, for a total of $78,877.50.

The Department explained its decision only briefly. It reasoned Husband retained an income interest in the Trust, which was not a "sole use" trust under Section 2113 of the Act, added by Section 35 of the Act of June 16, 1994, P.L. 279, 72 P.S. § 9113. The Trust was not a "sole use" trust because "income and principal [could] be distributed to the other beneficiaries during the lifetime of the donor(s)." R.R. at 84a. Absent a request for a future interest compromise, the Department

---

[3] Separately, in paragraph 1.3, the Wildes granted a trustee the power to amend the Trust's "administrative provisions," which referred to "any provision of the [T]rust dealing with the management and administration of the [T]rust." R.R. at 38a. Paragraph 1.3 clarified that no such amendment could "affect, enlarge, or shift any beneficial interests created hereunder." *Id.*

3

reasoned, it had "the right to assess tax at the highest rate in the chain of potential distributions." *Id.*

On May 24, 2018, Wife resigned as trustee of the Trust. Musheno, now in his role as successor trustee, filed a written protest to the Department's Board of Appeals (Board). In relevant part, Musheno asserted the Trust assets were worth $174,983.22 at the time of Husband's death, far below the Department's assessed value.[4] Musheno argued Husband did not retain an income interest in the Trust, having assigned his interest to Wife on February 15, 2016. In addition, he argued the Wildes owned the Trust assets with right of survivorship, such that they were exempt from inheritance tax under Section 2111(m). Wife passed away on May 18, 2020.

The Board issued a decision and order on July 10, 2020, which reduced the assessed value of the Trust from $500,000 to $174,983.22 and imposed a tax rate of 4.5% rather than 15%. The Board emphasized Husband's ability to change the Trust's beneficiaries and the broad powers available to a trustee. These powers could "be interpreted that the trustee may distribute the entire Trust to any one [sic] at any time or make intermittent distributions," which meant there was "no way to quantify the range of possible scenarios." R.R. at 94a. Due to the "uncertainties," the Board could not conclude the Trust was exempt from inheritance tax. *Id.*

Musheno appealed to Common Pleas, where he advanced a variation of his previous argument regarding Section 2111(m). Musheno argued no taxable transfer occurred at the time of Husband's death, explaining the Wildes continued to possess and enjoy the Trust assets after its creation. In Musheno's view, the Wildes "retained an implied joint life estate in the Trust," which did not terminate until Wife also passed away. R.R. at 30a-32a (emphasis omitted).

---

[4] Musheno valued the residence at $143,824.90 and the stock at $31,158.32.

4

By decree dated December 15, 2020, Common Pleas affirmed the Board's decision. Common Pleas focused its analysis on whether the Trust qualified as a "sole use" trust under Section 2113. The Trust was not a "sole use" trust, Common Pleas concluded, because the Wildes retained an *inter vivos* power of appointment over Trust assets, and disbursements from the Trust could be made to individuals other than the surviving spouse during that spouse's lifetime. Common Pleas rejected Musheno's position that the Wildes retained an "implied joint life estate" in the Trust for essentially the same reason, emphasizing the abilities of a trustee and the trust protector to distribute Trust assets.

Musheno appealed to this Court. In his brief, Musheno challenges Common Pleas' conclusion that the Trust was subject to tax upon Husband's death, contending no taxable transfer occurred until Wife also died and the Trust assets passed to the Family Members. Musheno's Br. at 5, 10-21. He contends creating a "sole use" trust under Section 2113 was not the only way the Wildes could have avoided inheritance tax and continues to cite the exemption at Section 2111(m).[5] *Id.*

## II. Discussion

Musheno's appeal requires us to interpret the Act and consider whether the Department's assessment of inheritance tax was improper. Statutory interpretation presents a question of law for which our standard of review is *de novo* and our scope of review is plenary. *Meyer v. Cmty. Coll. of Beaver Cnty.*, 93 A.3d 806, 813 (Pa. 2014) (citing *Dechert LLP v. Commonwealth*, 998 A.2d 575, 579 (Pa. 2010)). We do not defer to the orphans' court when reaching our decision, and we may review the entire record on appeal. *Mercury Trucking, Inc. v. Pa. Pub. Util. Comm'n*, 55

---

[5] Musheno argues in the alternative that only one-half of the Trust assets, proportional to Husband's interest, should have been subject to inheritance tax. Musheno's Br. at 5, 21-23. Given our disposition below, we do not address Musheno's alternative argument.

A.3d 1056, 1082 (Pa. 2012) (citing *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 n.2 (Pa. 2004)).

"The Act imposes an inheritance tax on a select list of 'transfers,' with the tax rate applied based on the relationship of the transferor to the transferee, and the value subject to tax generally based on the date of the transferor's death." *In re: Est. of Potocar*, 283 A.3d 936, 941 (Pa. Cmwlth. 2022) (footnote omitted). Under Section 2102 of the Act, added by Act 22, 72 P.S. § 9102, a "transfer" includes "the passage of ownership of property, or interest in property or income from property, in possession or enjoyment, present or future, in trust or otherwise."

We addressed a dispute similar to this one in *Potocar*. That case involved a husband and wife who placed assets in a revocable trust as joint tenants with the right of survivorship. *Potocar*, 283 A.3d at 938-39. When the husband died, the wife filed a return indicating she did not owe inheritance tax. *Id.* at 939. The Department disagreed, as did the Board. *Id.* at 939-40. The Board reasoned the trust was subject to tax because it was not a "sole use" trust under Section 2113. *Id.* at 940. According to the Board, the trust was not a "sole use" trust because the wife retained an *inter vivos* power of appointment over the trust assets. *Id.*

The Allegheny County Court of Common Pleas reversed the Board's decision, and this Court affirmed, concluding no inheritance tax was due. *Potocar*, 283 A.3d at 938-40. We agreed that the trust was not a "sole use" trust. *Id.* at 941-43. A "sole use" trust exists when a decedent transfers property to his or her surviving spouse, "for the sole use of the . . . surviving spouse during the surviving spouse's entire lifetime." 72 P.S. § 9113(a). Under this arrangement, "all succeeding interests which follow the interest of the surviving spouse shall not be subject to tax as transfers by the transferor" but instead "shall be deemed to be transfers subject to

6

tax by the surviving spouse of the property held in the trust or similar arrangement at the death of the surviving spouse." 72 P.S. § 9113(a)-(b). The Act defines a "transfer of property for the sole use" as one "to or for the use of a transferee if, during the transferee's lifetime, the transferee is entitled to all income and principal distributions from the property and no person, including the transferee, possesses an inter vivos power of appointment over the property." 72 P.S. § 9102. Because the wife retained an *inter vivos* power of appointment over trust assets, the "sole use" trust provision did not apply. *Potocar*, 283 A.3d at 942-43.

We went on to explain, however, that the transfer of property at the husband's death was exempt from inheritance tax under Section 2111(m), which provides as follows:

> (m) Property owned by husband and wife with right of survivorship is exempt from inheritance tax. If the ownership was created within the meaning of [S]ection 2107(c)(3) [of the Act, added by Act 22, 72 P.S. § 9107(c)(3)], the entire interest transferred shall be subject to tax under [S]ection 2107(c)(3) as though a part of the estate of the spouse who created the co-ownership.

72 P.S. § 9111(m).

We emphasized the wife's control over the trust assets, which indicated she was the "owner" of those assets, even while they were in trust. *Potocar*, 283 A.3d at 944. We also compared Section 2111(m) to Section 2108 of the Act, added by Act 22, 72 P.S. § 9108, a provision imposing tax on transfers in trust with the right of survivorship but expressly excluding transfers between spouses. "Section 2108 would be exactly on point," we recognized, "except it does not impose tax on a husband and wife. This is most likely because our General Assembly intended to exempt a husband and wife from tax under these circumstances and accomplished this intent with Section 2111(m)." *Potocar*, 283 A.3d at 945.

7

Here, Musheno filed this appeal, and the parties filed their briefs, before we issued our decision in *Potocar*. By *per curiam* order entered December 8, 2022, we directed the parties to address *Potocar* at oral argument. Musheno argued our legal analysis should be identical under the circumstances of this case. The Department disagreed, distinguishing the trusts in both matters. The Department also continued to maintain that the Trust would only be exempt from tax if it was a "sole use" trust under Section 2113.

We begin by acknowledging that Husband's death did not result in a "transfer of property for the sole use" of Wife, and the Trust was not a "sole use" trust under Section 2113. 72 P.S. § 9102. Wife could not receive or distribute Trust principal and, therefore, she was not "entitled to all income and principal distributions from the property." *Id.* In addition, both Wife and Musheno "possesse[d] an inter vivos power of appointment over" Trust assets. *Id.* A "power of appointment" includes the ability of a donor-donee to select who receives the remainder interest in a trust, as well as the ability to withdraw trust principal. Restatement (Third) of Prop.: Wills & Other Donative Transfers § 17.1 cmts. c-e, illus. 3 (Am. L. Inst. 2011). Wife could amend paragraph 3.1 of the Trust after Husband's death, which specified when the Trust would terminate and how assets would be distributed upon termination, while Musheno could distribute Trust principal to the Family Members.

Section 2113 is not the only provision that determines whether the Trust was subject to inheritance tax, however. The Act imposes tax only when there has been a "transfer" of property. 72 P.S. § 9102; Section 2106 of the Act, added by Act 22, 72 P.S. § 9106. Even when a transfer of property occurs, it might be exempt from tax under Section 2111(m) or another provision. 72 P.S. § 9111(m). Further, even when a transfer of property is "subject to tax," the applicable tax rate might be 0%,

8

as is the case with transfers between husband and wife.[6]  Section 2116(a)(1.1)(ii) of the Act, added by Act 22, 72 P.S. § 9116(a)(1.1)(ii).

The Department's assessment of inheritance tax in this case depends on the idea that the Wildes "transferred" property to the Family Members.  Otherwise, there would be no reason for the Department to impose a tax rate of 4.5%, which applies to "the transfer of property passing to or for the use of" certain family members, not including spouses, or a tax rate of 15%, which applies to "the transfer of property passing to or for the use of all persons other than those designated" in the Act or those who are exempt under Section 2111(m).  *See* 72 P.S. § 9116(a)(1), (2).  Although the Wildes as trustees and Musheno as the trust protector possessed the ability to distribute Trust income and principal, the record does not demonstrate any "ownership of property, or interest in property or income from property" passed to the Family Members "in possession or enjoyment, present or future" either before or as a result of Husband's death.  72 P.S. § 9102; *see In re Est. of Braman*, 258 A.2d 492, 494-95 (Pa. 1969) (contrasting an interest in property from a mere expectancy).

We instead hold, as in *Potocar*, that Husband's death resulted in a tax-exempt transfer of "[p]roperty owned by husband and wife with right of survivorship" under Section 2111(m).  72 P.S. § 9111(m).  In this regard, the Department contends the Wildes no longer "owned" their assets after creating the Trust, so Section 2111(m) did not apply.  Department's Br. at 7.  The Department is mistaken.  A distinguishing feature of trusts "is divided ownership of property, the trustee usually having legal

---

[6] The spousal tax rate is currently 0%.  72 P.S. § 9116(a)(1.1)(ii).  This was not always the case, which is part of why the Act distinguishes tax-exempt transfers between spouses under Section 2111(m) from taxable transfers between spouses at the rate of 0% under Section 2116(a)(1.1)(ii).  Act 22 originally imposed a spousal tax rate of 6% before amendments reduced it to 3% and then to 0%.  *See* Section 36 of the Act of June 16, 1994, P.L. 279; Section 19 of the Act of June 30, 1995, P.L. 139.

title and the beneficiary having equitable title. . . . the interest of the beneficiary amounts to equitable ownership of the trust res." Amy Morris Hess et al., *Bogert's the Law of Trusts and Trustees* § 17 (2023) (footnote omitted). Indeed, our Supreme Court recently reaffirmed that vested beneficiaries have an "equitable ownership" interest in trust assets. *See Trust Under Will of Augustus T. Ashton*, 260 A.3d 81, 91 (Pa. 2021) (citing *Commonwealth v. Stewart*, 12 A.2d 444, 446-47 (Pa. 1940)). Even if the Trust "owned" its assets in a strictly legal sense, the Wildes became equitable owners.

Further, it is important to recognize "that tax law deals in economic realities, not legal abstractions." *Greenwood Gaming & Ent., Inc. v. Commonwealth*, 263 A.3d 611, 623 (Pa. 2021) (Saylor, J., concurring) (quoting *PPL Corp. v. Comm'r of Internal Revenue*, 569 U.S. 329, 340 (2013)) (quotation marks omitted). The reality here is that the Wildes reserved significant control over the Trust assets, comparable to owning them outright. *See Potocar*, 283 A.3d at 944. The Wildes continued to live in their residence, which made up most of the Trust's value, and they retained the ability to receive income from their stock, which made up the rest. Perhaps most importantly, they retained the ability to amend a provision of the Trust, paragraph 3.1, directing when the Trust would terminate and who would be entitled to receive Trust assets upon termination.

### III. Conclusion

Viewed from either an equitable or practical perspective, the Wildes "owned" the Trust assets with right of survivorship. 72 P.S. § 9111(m). When Husband died, Wife, and no one else, succeeded to his interest in the assets.[7] Thus, consistent with

---

[7] As summarized above, Husband assigned his income interest in the Trust to Wife before his death. We note the Wildes could act "jointly and severally" under the terms of the Trust, and Wife **(Footnote continued on next page…)**

10

the General Assembly's "manifest objective" to "spare a husband and wife from inheritance tax on transfers to each other while imposing tax on others," *Potocar*, 283 A.3d at 945, we conclude the Trust was not subject to tax before Wife also died, and we reverse Common Pleas' December 15, 2020 decree.[8]

_____
STACY WALLACE, Judge

---

could distribute income to herself without Husband's consent even before the assignment. *See* R.R. at 38a-39a. Regardless, even if this was a transfer subject to tax, it would be a transfer from Husband directly to Wife at the spousal tax rate of 0%. 72 P.S. § 9116(a)(1.1)(ii).

[8] The original record indicates Musheno made an inheritance tax payment on January 7, 2021. Section 2181 of the Act, added by Act 22, 72 P.S. § 9181(a), provides for refunds "of any tax to which the Commonwealth is not rightfully or equitably entitled."

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: The John Wilde and        :
Josephine A. Wilde Income Only   :
Protector Trust                :
                               : No. 39 C.D. 2021
Appeal of: Francis H. Musheno, III  :

## **O R D E R**

      **AND NOW**, this 19th day of October 2023, the December 15, 2020 decree of the Court of Common Pleas of Lycoming County is **REVERSED**.


                                   _____
                                   STACY WALLACE, Judge